STATE, *ex rel.* CARY D. LANDIS as Attorney General, v. AMOS LEWIS, as Judge of the Circuit Court of the 14th Judicial Circuit.

160 So. 485.

Opinion Filed March 30, 1935.

*John* H. *Carter,* Jr., State Attorney, for Relator;
*McClellan & Ray,* for Respondent.

DAVIS, J.—This is an original mandamus in the nature of a *procedendo* brought in the name of the Attorney General of the State as relator for the purpose of coercing the respondent, as Judge of the Circuit Court of the Fourteenth Judicial Circuit, to proceed with the trial of a criminal indictment in accordance with the law' applicable to a case wherein a judgment of conviction has been reversed by the Supreme Court on writ of error and the cause remanded for a new trial according to law. The facts as disclosed by the alternative writ of mandamus, and the respondent Judge's return thereto, are as follows:

On December 13, 1932, one J. P. I. Chance killed one R. J. Flanders in Calhoun County, Florida. At the 1933 Spring Term of the Circuit Court of that county, an indictment was duly returned by the grand jury charging said Chance with the first degree murder of said Flanders. In July, 1933, the defendant Chance was placed upon trial in the Circuit Court of Calhoun County upon the charge of first degree murder contained in the indictment.

Prior to the beginning of the trial, the defendant moved the Court to quash the regular and special venires summoned therefor, alleging illegality in the filling of the jury box from which the venires were drawn. The motion was

overruled, and a jury was empanelled from said venires and sworn, the trial proceeded and the defendant was convicted of second degree murder. Judgment was entered against him upon the verdict, and upon writ of error sued out by him, the judgment was reversed by this Court solely upon the ground that he had been tried by an illegal jury.

On January 10, 1935, the case was again called for trial, the State insisting upon a trial of the defendant upon the charge of first degree murder contained in the indictment. The respondent, as Judge of the Circuit Court of Calhoun County, however, refused to entertain jurisdiction of the charge of first degree murder upon the grounds that the defendant Chance had been heretofore put in jeopardy upon the charge of murder in the first degree and acquitted by a jury. Whereupon, upon petition of the Attorney General, an alternative writ of mandamus was issued herein, requiring the respondent as presiding trial judge to entertain jurisdiction of the case upon the charges of first degree murder, or to show cause why he does not do so.

The respondent Circuit Judge has made his return, stating his reason for not complying with the command of the alternative writ to be that the defendant Chance has been acquitted of the charge of first degree murder by the verdict of the jury convicting him of second degree murder. Motion for peremptory writ, notwithstanding the return, has been made by relator.

In support of his motion for a peremptory writ, the Attorney General advances the contention that inasmuch as the verdict of guilty of second degree murder was on appeal set aside as illegal at the instance of the defendant, Chance, who successfully prosecuted a writ of error to the judgment rendered against him at the first trial (Chance v. State, 115 Fla. 397, 155 Sou. Rep. 663), which judgment

was reversed because a challenge to the array of the trial jurors was erroneously overruled, that relator has never been placed in jeopardy because of the illegality of the jury which tried him and that therefore said defendants' constructive acquittal of first degree murder became a nullity *eo instanti* the judgment of conviction of second degree murder was reversed because of an illegally constituted trial jury. To put the proposition another way, the relator's argument is to the effect that defendant Chance has never been legally acquitted of first degree murder because of the fact that he was never in jeopardy upon the previous trial upon the indictment found against him for murder in the first degree, because no trial jury has ever been legally empanellel to try said defendant at the first trial as evidenced by the reversal of the verdict and judgment on that ground.

At the common law, and under the interpretations in American jurisprudence, including the State of Florida, protection from second jeopardy for the same offense includes immunity from further prosecution where, on a valid indictment in a court of a competent jurisdiction, the accused is acquitted by a regularly empanelled jury sworn to try the issue of defendant's guilt. Allen v. State, 52 Fla. 1, 41 Sou. Rep. 593, 120 Am. St. Rep. 188, 10 Ann. Cas. 1085. The rule applies to one who is convicted of a crime less in degree than the offense for which he was indicted. In such instances the defendant is by implication acquitted of the greater offense and may plead the acquittal as a bar to a subsequent indictment for it, even though the conviction of the lesser offense is reversed on appeal. Mann v. State,, 23 Fla. 610, 3 Sou. Rep. 207; *Ex Parte* Vickery, 51 Fla. 151, 40 Sou. Rep. 77; West v. State, 55 Fla. 200, 46 Sou.

Rep. 93; Golding v. State, 31 Fla. 262, 12 Sou. Rep. 525; Johnson v. State, 27 Fla. 245, 9 Sou. Rep. 208.

Section 8364, C. G. L., 6059 R. G. S., reads as follows:

"No person shall be held to answer on a second indictment, information or complaint, for a crime of which he has been acquitted, but such acquittal may be pleaded by him in bar of any subsequent prosecution for the same crime, notwithstanding any defect in the form or substance of the indictment, information or complaint. (Ch. 4055, Acts 1891, Sec. 7)."

The defendant Chance, prior to reversal of the first judgment of conviction, was placed on trial against his consent. At the very beginning of that trial he filed his challenge to the array of jurors on both the regular and special venires. The State resisted the defendant's efforts to have a proper jury empanelled and contended that the irregularities complained of in the challenge to the array, were not sufficient to render the jury illegal, and the trial court so held. The error committed by the trial court in thus improperly overruling and disallowing the defendant's challenge to the array of the regular and special venires of trial jurors, was of a procedural, not fundamental character. And had not Chance, the convicted defendant, duly insisted upon it as cause for a new trial, ir if he had failed to assign it in this Court by writ of error as ground for reversal of the judgment against him of second degree murder, such error would thereby have been waived and thus left the judgment of conviction based on the previous trial a proper and lawful judgment that could in no sense be avoided on collateral attack such as by habeas corpus.

When the proceedings had against a person placed on trial and tried by a jury before a court of competent criminal jurisdiction, upon a valid indictment or information, upon

which the defendant has been arraigned and to which he has pleaded or otherwise joined issue under circumstances equivalent to a plea of not guilty, are such that a judgment of conviction rendered pursuant to a verdict of guilty returned by the jury trying the case would not be subject to collateral attack on habeas corpus as a void judgment, but would simply be reversible on appeal for some procedural error committed and assigned as cause for a new trial upon appellate review in due course of appellate procedure, jeopardy attaches to the person so tried, and where under such circumstances, a defendant has been indicted and tried for murder in the first degree, but convicted of murder in the second degree, and the second degree murder conviction has been reversed for a new trial, because of a procedural error committed in the manner of selecting the trial jurors who found the verdict of guilty of murder in the second degree, it would amount to an unconstitutional deprivation of the rights of the accused under Section 12 of the Bill of Rights to again place such defendant on trial for murder in the first degree, the verdict and judgment of conviction of second degree murder not being void, but simply infected with reversible error for which it slight be set aside upon due appellate complaint in that behalf.

This Court is committed to the doctrine that where a jury is competent under the law, and is impartial as required by the Constitution, and has been tendered by the State and has been accepted by the accused as the trial jury to try the issues of the accusation made against him, that, in the absence of duress or other improper influence tending to injure the accused, such jury's verdict is, for the purposes of judgment against the accused if found guilty, legally sufficient to support a judgment adjudicating guilt as well as the lawful sentence of the law that is permitted

to be imposed pursuant to such adverse adjudication. In short, the verdict and resultant judgment are valid against collateral attack, even though a ground for challenge to the array of jurors, or to some of the individuals composing it, would have been sustained had such challenges been timely made. Washington v. State, 95 Fla. 289, 116 Sou. Rep. 470 (text 474); (certiorari denied 278 U. S. 599, 49 Sup. Ct. Rep. 8, 73 L. Ed. 528). By the same token a verdict of acquittal in whole or in part in such a case insures to the benefit of the accused with equivalent legal effect.

We hold therefore that when a defendant has been duly tried upon an indictment charging first degree murder, resulting in a conviction of second degree murder, and the conviction is reversed by the Supreme Court at the instance of the defendant because the jurors which tried him were subject to a proper legally allowable challenge to the array before they were empanelled and sworn as trial jurors, that such defendant cannot be subsequently tried upon the charge of first degree murder contained in the indictment, but must be deemed and held to have been duly and legally acquitted of such first degree murder charge, leaving to stand against the accused only the charge of second degree murder and lower degrees of homicide which may be embraced therein.

Mandamus in the nature of *procendendo* denied.

WHITFIELD, C. J., and TERRELL and BUFORD, J. J., concur.
ELLIS and BROWN, J. J., dissent.

ELLIS, P. J. (dissenting).—The statement that the judgment was reversed in the case of Chance v. State, 115 Fla. 397, 155 South. Rep. 663, "solely upon the ground that he had been tried by an illegal jury,", is somewhat confusing in the light of the point in controversy, which is that a person is not placed in jeopardy until he is confronted by a

legally constituted jury which has been charged with the deliverance of the accused. See 16 C. J. 244; 8 R. C. L. 139.

A person accused of crime is not "tried," within the legal acceptance of that term, by twelve persons who have been assembled without authority of law and sworn to try the accused according to the evidence, because a trial in a criminal case where the accused is charged with felony means where a jury has been legally impaneled and sworn to try the issue joined between the State and the accused according to the evidence. That never happened in this case.

The accused protested to the court against the impaneling of the twelve persons brought before the court to serve in the capacity of jurors because he said the method of their selection was unlawful, therefore the bringing of the men together to perform jury service in the case was of no more legal efficiency than if they had by chance appeared in the court room and were required to take their seats in the jury box for jury duty.

This Court, in considering the question brought here by the accused in protest against a judgment resting upon the decision of the so-called jury, said that the motion of the accused to quash the venire under which the persons were brought into court to serve as jurors should have been granted and appropriate orders made for the proper preparation of jury lists by the County Commissioners in strict compliance with the controlling statutes.

The order of the court was in the following words: "Reversed for appropriate proceedings."

The judgment was a nullity. There was no legal trial of the accused. The administering of the oath to the twelve persons who sat in the jury box did not make legal jurors of them. At no time during the proceedings after the plea of not guilty was there a trial of the accused within the

meaning of that term. It is no argument to say that if the accused had not continued his protest against the unlawful proceedings that the judgment would have been executed by the imprisonment of the accused, because that is to say that the consent of the accused imparts a quality of legal verity to a proceedings in a court which had no jurisdiction of such proceedings. The right to a trial by a jury is secured to a person charged with crime by the terms of the Constitution. Sec. 3, Bill of Rights.

In Cotton v. State, 85 Fla. 197, 95 South. Rep. 668, the Court held that the trial of an issue on a plea in abatement to an indictment for a capital offense by a jury of six was a denial of the right of a jury trial. Such a proceeding was a lack of the due process of the law that is demanded by the Constitution.

The accused could not have waived trial in this case by a jury of less than twelve persons. A jury within the legal meaning of that terms consists of persons duly chosen as the law requires for that service. That was not done in this case. Therefore a waiver of objection by him would have been a waiver of a jury trial which was impossible under the Constitution.

The fact that in the absence of an objection from him the so-called conviction would have been executed proves nothing except that in some cases there are miscarriages of justice which is not remarkable as to any human institution.

It is true as stated in the majority opinion that the doctrine obtains in this State that the conviction of a person of a lower grade of offense embraced in the higher offense with which he stands charged is an acquittal of the higher grade of offense, but it is difficult to understand how that doctrine applies in a case where there has been no legal con-

viction. In any case the so-called conviction has been set aside on the attack of the accused. The entire proceeding including the so-called verdict and judgment has been vacated. How then can that which has been annulled be treated as valid to acquit the accused on one charge and void as a conviction on the other or lesser offense.

I therefore think the writ should issue.

BROWN, J. (concurring specially).—I do not go so far as to hold that the conviction, if it had not been reversed and set aside, would have been a nullity. On the face of the record, as I viewed the original trial, the court had jurisdiction and the jury was legal. It was by extrinsic evidence that the defendant showed that the jury list had not been made up as the law required. In other respects, I concur in the opinion and conclusion reached by Mr. Justice ELLIS.