STATE, *ex rel.* C. A. BROWN, SAM E. CROSBY, JOHN P. BRIDGES, ROBERT CHAPPELL, F. W. SWITZER, C. W. CARLISLE and R. G. TITTSWORTH, v. ROBERT T. DEWELL, as Judge of the Criminal Court of Record for Polk County, Florida.

167 So. 687.

Opinion Filed May 5, 1936.

*Whitaker Brothers, Charles F. Blake, L. E. Womack, E. A. Bosarge, Luther Johnson* and *Chauncey Boyer,* for Relators;

*J. C. Rogers, J. Rex Farrior, B. P. Edwards, Manuel M. Glover* and *Wallace Shafer,* for Respondents.

## STATEMENT.

An alternative writ of mandamus has been issued in this case, the material portions of which read as follows:

"WHEREAS, C. A. Brown, Sam E. Crosby, John P. Bridges, Robert Chappell, F. W. Switzer, C. W. Carlisle and R. G. Tittsworth, have by sworn petition represented unto the Supreme Court:

"First: A grand jury, acting in and for the body of Hillsborough County, State of Florida, did, during the month of December, 1935, conduct an investigation into the alleged kidnaping of one E. F. Poulnot, Sam J. Rogers, and Joseph A. Shoemaker, as well as into the alleged murder of the said Joseph A. Shoemaker; all being involved in and forming one and the same transaction. That in the course of said investigation so conducted by said grand jury, the said J. Rex Farrior, as State's Attorney of Hillsborough County, Florida, and the said grand jury, caused witnesses to personally appear and testify before said grand jury in reference to said transaction, involving said alleged kidnaping and alleged murder; that among said persons who were so caused to appear and testify before said grand jury were E. F. Poulnot and Sam J. Rogers, and that each of said persons did personally appear before said grand jury and testify with reference to said kidnaping and murder; the said E. F. Poulnot and Sam J. Rogers being two of the parties alleged to have been kidnaped.

"Second: Relators further showeth that as a result of said investigation, the grand jury of Hillsborough County, Florida, returned true bills or indictments against relators, charging relators with kidnaping, conspiracy to kidnap, second degree murder, and accessories to second degree murder; that subsequent thereto, C. J. Hardee, as County Solicitor of Hillsborough County, Florida, filed information against relators, charging them with said offenses as embraced in said indictments of kidnaping, conspiracy to kidnap, second degree murder and accessories to second degree murder, but that the County Solicitor did not have before him, nor take the testimony of said Poulnot and Rogers. That subsequent to the filing of said informations· an order was duly entered changing the venue for the trial of said cases from Hillsborough County to Polk County, Florida.

"Third: Relators further showeth unto the Court that they are, at the present time, on trial before the Criminal Court of Record of Polk County, Florida, which is presided over by Honorable Robert T. Dewell as Judge of said Criminal Court of Record; said relators being on trial on the information charging the kidnaping of and conspiracy to kidnap E. F. Poulnot.

"Fourth: That the State of Florida, by and through the prosecuting attorneys, has placed upon the stand as witnesses, Sam J. Rogers' and E. F. Poulnot; that the said Sam J. Rogers has been interrogated by the State fully and completely with reference to his own kidnaping, as well as that of E. F. Poulnot, as well as that of Joseph A. Shoemaker, as well as into the death of the said Shoemaker; the State having been allowed to interrogate said witnesses about the entire transaction, as to all three of the alleged kidnapings and the alleged murder; that the said E. F. Poulnot has likewise testified on behalf of the State as to

all of said matters. That relators have reserved the right to further cross examine the witness, Sam J. Rogers, and that the examination of the witness, E. F. Poulnot, in chief has not been completed.

"Fifth: That relators further showeth unto the Court that when the said Sam J. Rogers and E. F. Poulnot testified before said grand jury in Hillsborough County, Florida, in December, there were present in said grand jury room at the time they testified, the official court reporter of the Circuit Court of Hillsborough County, Florida, to-wit: R. F. Johnson; that said reporter was there with the permission of said Circuit Court, as well as of J. Rex Farrior, the State's Attorney; that said reporter took down, stenographically, the testimony of said Poulnot and Rogers as testified to and given before said grand jury.

"Sixth: Relators further showeth that they are informed and believe that the said E. F. Poulnot and Sam J. Rogers, in testifying before said grand jury in Hillsborough County with reference to said transaction involving the kidnaping charges, as well as the murder charge, testified to material and essential facts, and made vital statements with reference to said transaction, contradictory to and wholly at variance with the testimony given by each of said witnesses before the jury in the Criminal Court of Record of Polk County, Florida, where said case is now being tried; that it is imperative and of paramount importance, as well as indispensable to the administration of justice that relators be enabled to establish before the jury at their present trial, the testimony given and facts testified to by the said Poulnot and Rogers before said grand jury, and that it is imperative that relators be fully advised and have access to the testimony so taken down by said R. F. Johnson, as court reporter, of said Poulnot and Rogers, as testified to and

given before said grand jury, in order that their counsel, at the present trial, may be enabled to properly cross examine each of said witnesses and lay a proper predicate for impeachment.

"Seventh: Relators further show that they caused a subpoena *duces tecum* to be issued out of and by the Criminal Court of Record of Polk County, Florida, directed to the said R. F. Johnson and all of his deputies or assistants, requiring them to be and appear before the Judge of the Criminal Court of Record of Polk County, Florida, as a witness in the cause there on trial against these relators, and to bring with them and produce all shorthand notes and all testimony given before the grand jury of Hillsborough County by Sam J. Rogers and Eugene F. Poulnot, wherein they testified concerning the alleged kidnaping of the said Eugene F. Poulnot, Sam J. Rogers, and Joseph Shoemaker, as well as wherein they testified relative to the said murder of the said Joseph Shoemaker, as well as produce the transcription of said testimony, a certified copy of said subpoena *duces tecum* being hereto attached, marked exhibit "A" and made a part hereof. That the said Eugene F. Poulnot and Sam J. Rogers have already testified as witnesses for the State at said trial fully and thoroughly with reference to all of the matters mentioned in said subpoena; that said subpoena *duces tecum* was duly served upon the said R. F. Johnson, and he personally appeared before the Criminal Court of Record of Polk County, Florida, and the Honorable T. Dewell as Judge thereof, in response to said subpoena, and was sworn before the said Judge and stated among other things that he had with him, in his possession, the transcribed testimony of the said E. F. Poulnot and Sam J. Rogers, as testified to and given by each of said witnesses before the grand jury in reference to the matters

mentioned in said subpoena, and the said Johnson stated that he was willing to comply with said subpoena *duces tecum* by turning over said transcribed testimony to the Clerk of the Criminal Court of Record of Polk County, Florida, or to relators' counsel, except for the fact that he had been placed under oath before or at the time he was in the grand jury room and took down the testimony of said witnesses; counsel for relators insisted that the Honorable Robert T. Dewell order and direct the said Johnson to turn over, either to the Clerk of the Criminal Court of Record of Polk County, Florida, or to them, said transcribed notes, but the said Judge denied said asking and ruled that the said Johnson could not be required to turn the same over to the Clerk of said Criminal Court of Record or to counsel for relators.

"Eighth: Relators further showeth unto the Court that the testimony of the said Poulnot and Rogers was given before said grand jury in the month of December, 1935; that the said grand jury remained in continuous session up until the first week in April, 1936, during which time they were investigating into the alleged gambling condition in Tampa, alleged crooked election condition, as well as many other matters, having before them hundreds of witnesses; that in addition they had before them over one hundred witnesses in connection with the alleged kidnapings and alleged murder involved in the case now on trial; that by reason of the large number of witnesses and numerous complicated matters before them, it is impossible for counsel for relators to secure from any juror a clear or distinct recollection as to the testimony given by E. F. Poulnot or Sam J. Rogers, and therefore, it amounts to a denial of justice to deprive relators of access to the transcribed testimony of said witnesses as given by the grand jury; that to deprive relators

of access to this transcribed testimony will inflict upon relators irreparable injury, and that relators have no other way or means by which they can secure the testimony given by said Poulnot and Rogers before said grand jury.

"Now, THEREFORE, we being willing that full and speedy justice be done in the premises do command you, Robert T. Dewell, as Judge of the Criminal Court of Record of Polk County, Florida, to direct the aforesaid witness R. F. Johnson to comply with the subpoena *duces tecum* by turning over and delivering to the Clerk of the Criminal Court of Record of said Polk County, to be inspected by counsel for relators, the transcribed testimony as given by E. F. Poulnot and Sam J. Rogers before said grand jury of Hillsborough County, Florida, as specified and commanded in said subpoena *duces tecum* or that you show cause before the Supreme Court at ten o'clock A. M. Tuesday, April 28, A. D. 1936, why you refuse so to do."

The present hearing is on a motion to quash the alternative writ of mandamus, which motion raises the following points of law: (1) writ of error and not mandamus, is the relators' only available remedy for the correction of the alleged procedural error complained of; (2) the witness, R. F. Johnson, was not officially before the Grand Jury, therefore his notes and transcription of the testimony of witnesses adduced before the Grand Jury were not subject to defendant's *subpoena duces tecum;* (3) that no judicial order lies at the instance of a defendant on trial in a criminal case to entitle such defendant to inspect a transcript of testimony given before a Grand Jury concerning the transaction involved upon his subsequent criminal trial, or otherwise; (4) the veil of secrecy not having been removed as to the transcript of the testimony sought to be inspected, although such transcript was actually before the trial court

in response to defendant's *subpoena duces tecum* issued to procure the production of same for defense purposes, the defendant on trial was not entitled to inspect the notes of the court reporter containing a transcription of the testimony of two witnesses who had testified before the Grand Jury concerning the same transaction about which they had already been adduced as prosecuting witnesses and testified on the relators' criminal trial, despite the showing made by the defendant that an inspection of such notes and transcription of testimony before the Grand Jury was reasonably necessary to the defense counsel in order to enable them to lay a proper legal predicate for impeachment of State witnesses.

## Opinion of the Court.

PER CURIAM.—Where an information is based on an indictment returned by a grand jury, and the defendant is on trial before a Criminal Court of Record after having been arraigned on such information, the defendant is entitled to compulsory process under Section 11 of the Bill of Rights of the Florida Constitution, to have brought into the trial court any material evidence shown to be available and capable of being used by him in aid of his defense, including the beneficial enjoyment of the compulsory process of *subpoena duces tecum* for that purpose. United States v. Aaron Burr, Case No. 14,692D, 25 Fed. Cases 30.

A denial of the right to compulsory process guaranteed by the Bill of Rights, whether accomplished in the form of a denial of the process itself, or in the form of a denial of the legal beneficial use of the fruits of such process after it is served, is procedure outside the limitations of the trial court's power in the trial of a criminal case. And no amount of judicial discretion, such as is ordinarily vested in the trial judge with reference to matters of evidence and pro-

cedure, can supply a defect or want of jurisdiction on the part of the Court to proceed outside the limitations of the Constitution with respect to a defendant's constitutional procedural rights under Section 11 of the Bill of Rights to compulsory process and to the beneficial enjoyment of the fruits of that process after it has been issued and served. State, *ex rel.* Dillman, v. Tedder, 123 Fla. 188, 166 Sou. Rep. 590.

Where denial of the benefit of the constitutional Bill of Rights is clearly alleged and shown, the remedy by writ of error may not be adequate to fully protect the rights of an accused to a speedy and fair trial according to essential requirements of law, and where the demonstrated exigencies of a particular situation shown to exist demand it, an appropriate original writ from the Supreme Court may be issued before, or during the progress of, a criminal trial in order to secure to a defendant prior to conviction the protection of a fundamental right secured to him by the Constitution as a part of his trial. Annenberg v. Coleman, 121 Fla. 133, 163 Sou. Rep. 405; State, *ex rel.* Landis, v. Lewis, Circuit Judge, 118 Fla. 910, 160 Sou. Rep. 485; See also: State, *ex rel.* Dillman, v. Tedder, *supra,* and State, *ex rel.* Garrett, v. Johnson, Circuit Judge, 112 Fla. 112, 150 Sou.· Rep. 239.

While it is the policy of the law to require, the utmost secrecy as to a grand jury's proceedings while the grand jury is in session, the purpose and the policy of the law are largely accomplished after the indictment or presentment has been found and published, the custody of the indicted accused had and the grand jury finally discharged. The rule of secrecy concerning matters transpiring in the grand jury room is not designed for the protection of witnesses before the grand jury, but for that of the grand jurors, and

in furtherance of the public justice. A witness before the grand jury has no privilege of having his testimony there treated as a confidential communication, but must be considered as testifying before the Grand Jury under all the obligations of an oath in a judicial proceeding. Hence such witness' testimony may be disclosed whenever it becomes material to the administration of justice; otherwise witnesses before the Grand Jury might be tempted to commit perjury without fear of punishment, and grand jurors would have no credible evidence on which to act on the one hand, and the citizen on the other would be deprived of one of his most boasted and valuable protections against arbitrary accusations and arrests. 12 Ruling Case Law, paragraph 32, page 1039.

It has therefore been uniformly held that a member of the Grand Jury may be required, when public justice demands it, to testify as to statements made by a witness before the Grand Jury, when offered for the purpose of contradicting other statements made by the same witness or party before a different tribunal or authority. Jenkins v. State, 35 Fla. 737, 18 Sou. Rep. 182, 48 Am. St. Reports 267. And on the same principle it has been held to be permissible for the defense in a criminal case to impeach a State witness testifying before a trial jury by showing that the testimony of that same witness when appearing before the Grand Jury does not correspond in essential particulars with his subsequently given trial court testimony. Atwell v. United States, 162 Fed. 97, 89 C. C. A. 97, 15 Ann. Cases 253, 17 L. R. A. (N. S.) 1049.

In this case the alternative writ of mandamus alleges, and the motion to quash admits to be true, the fact that E. F. Poulnot and Sam J. Rogers, both of whom have appeared, been sworn, and testified on the trial being held in the

Criminal Court of Record of Polk County before the respondent Judge, likewise appeared, were sworn and thereupon testified before the Hillsborough County Grand Jury concerning the identical transaction about which they are testifying against the relators on the present trial, as prosecution witnesses. The alternative writ further alleges, and that allegation is admitted to be true, that one R. F. Johnson, the official court reporter of the Hillsborough County Circuit Court, was present before the Grand Jury (whether rightfully or wrongfully so is immaterial) and there heard, took down in shorthand notes, and later transcribed a *verbatim* reproduction of the exact testimony so given before the Hillsborough County Grand Jury by said prosecution witnesses, E. F. Poulnot and Sam J. Rogers. The alternative writ still further alleges, and that allegation is admitted to be true, that the notes and transcription of the testimony that said witness, R. F. Johnson, heard and recorded as given before the Grand Jury, are in said Johnson's possession, that in response to a *subpoena duces tecum* said Johnson appeared in court as a defendants' witness for the relators in this case; that said Johnson has brought with him the transcription and notes of what he had heard testified to in the grand jury room while he was there engaged in taking down the testimony of said Poulnot and Rogers; that he (said witness Johnson as a defense witness) is entirely willing to give the relators, as defendants on trial in the present case, the benefit of what he knows about the Poulnot and Rogers testimony before the grand jury, by turning over to defense counsel for inspection the notes and transcription that he has made and would be able to testify to as a witness, if called in rebuttal of the State's case; that in fact he would do so but for his belief that his oath of

secrecy as a reporter of proceedings before the Grand Jury precludes him from so doing.

So the real proposition in controversy is whether or not the respondent Judge of the Criminal Court of Record is legally justified' in his refusal to give the relators any real benefit of their *subpoena duces tecum* (constitutional compulsory process) against the witness Johnson, since said Johnson has appeared personally in response to the service of the process, but denies to the defendants who have made him their own witness, any useful function as such witness by in effect refusing to advise with defense counsel by informing defense counsel what his stenographic notes and transcription of testimony before the Grand Jury would enable him to testify to against the veracity of the State witnesses Poulnot and Rogers, should a proper predicate for impeaching said witnesses be first laid by cross examination and thereupon said Johnson be called as a defense witness to testify as such with the aid of his notes, concerning what he knows the witnesses Poulnot and Rogers testified to when appearing in his hearing and presence and to his knowledge, before the Hillsborough County Grand Jury.

This is not a case where a court reporter's mere transcription of testimony given by witnesses before a grand jury, as taken down by a stenographer present in the grand jury room and hearing the testimony given, but absent signing or approval of the transcription by the witnesses concerned is sought to be offered as substantive proof. No question of admissibility or exclusion of the stenographer's notes or transcript as substantive evidence is involved. This is so because the State was still engaged in putting on its own case when this controversy originated, and the taking of testimony on the part of defendant has not yet been begun.

Nor is this an attempt by way of mandamus to the trial

judge, to coerce the respondent judge to order turned over to the defendants' counsel memoranda belonging to and *in the possession of the State's Attorney or his representatives* for the purpose of enabling the defendant to prepare his defense or impeach State witnesses. If that were the case, the authorities cited in the brief of respondent, such as State v. Rhodes, 81 Ohio St. Rep. 397, 2 Am. & Eng. Ann. Cas. 415, and Havernor v. State, 125 Wis. 444, 4 Am. & Eng. Ann. Cas. 1052, and similar decisions, would be in point and decisive of this case against the relators. In this case, the documents sought to be inspected *are not in the possesssion of the prosecuting authorities, as such.* On the contrary, such transcription as exists, and such as is wanted to be inspected, is in the hands of the witness, R. F. Johnson, as a duly summoned defendant's witness who has actually appeared in court bringing the documents in question with him, but who refuses to allow defense counsel to know what the same contains in the form of a transcription of the evidence taken by him before the Grand Jury, because of his belief that he is under a binding oath of secrecy as a court reporter not to divulge the same to anyone or permit the same to be inspected without the State's Attorney's consent, unless some order of court is entered to that effect.

It was admitted by the State's counsel in argument at the bar of this Court that no rule of law prohibits proof on the part of the defendant as to what was testified to in the grand jury room, when material proof thereof is to be tendered for the purpose of impeaching State witnesses after they have already testified in the case now on trial. But the argument is that such proof can only be adduced by calling a grand juror and orally interrogating such grand juror as to what he may remember the witnesses Poulnot and Rogers said when testifying before the Grand Jury.

If the State's premise is a true one, it could hardly be controverted, that if the witness R. F. Johnson had himself been a member of the Grand Jury, and not a court reporter, although a skilled stenographer, and as such grand juror had taken down the testimony of witnesses he had heard testify, so that the memoranda thus made by him in the form of his stenographic notes, would afford data upon which he as a witness could refresh his memory, and thereby be enabled to swear to exactly what each witness said, that upon *subpoena duces tecum* duly issued, that such grand juror would be exempt from bringing with him to court for the inspection and use of the defendant, pursuant to compulsory process served upon him as a defense witsess, not only his mental recollection of what witnesses said, but his memoranda taken down at the time definitely showing what was said as recorded by him at the time.

Nor could it be legitimately maintained that once summoned as a defense witness, that any grand juror's oath of secrecy theretofore taken by said Johnson as a witness, would preclude him from revealing to the defense, upon being consulted by counsel to that end, exactly what testimony, he, said Johnson, as a witness, when later called to stand to testify for the defense, would be able to give when asked about what he heard and saw testified to by Poulnot and Rogers when the latter appeared before the Grand Jury. Neither would such grand juror's oath of secrecy, as we have heretofore seen, prevent the calling of any one not a grand juror, but personally cognizant of the facts testified to in the grand jury room, to testify thereto as a defense witness, once a proper predicate for impeaching the state witnesses, Boulnot and Rogers, has been duly laid along the line of what their testimony before the Grand Jury was when there appearing.

So the position of the witness Johnson (who as we have pointed out was before the Court in his capacity as a duly summoned defense witness and not as a representative of the prosecuting attorney's office) in refusing to permit defense counsel to inspect the notes and transcription he had made of testimony of Poulnot and Rogers before the Grand Jury for purpose of laying a predicate based thereon later to use Johnson as an impeaching witness for the defense, is no different in practical result to the accused than if he were a member of the Grand Jury, and not a court reporter, and had been summoned for a like purpose while in possession of exactly the same kind of memoranda, and thereupon refused to have any consultation with defense counsel, or to tell defense counsel what he knew about Poulnot and Rogers' testimony, and the Court had refused to order him to confer with defense counsel as to the facts within his knowledge, merely because the State Attorney objects to such conference without his consent on the ground of violation of the secrecy of the Grand Jury Room.

Nor is Johnson's position before the Court any different than if he were a duly summoned defense witness of an ordinary kind and not a court reporter, such as a witness summoned into court to bring with him documentary evidence of value to the defense, for example a record of finger prints made by him that the defense deems material to its case, and thereupon said witness had announced that because he had given his word to the State Attorney not to reveal what he knew, or to let any one see the finger prints without the prosecutor's consent, that he would refuse to confer with defense counsel about his knowledge as a witness, or let defense counsel examine the finger print record brought by him into court under *subpoena duces tecum*.

The right of a defendant in a criminal case to compulsory

process for witnesses in his behalf means something more than the barren and sterile issuance of a paper by which the witness is made to appear, but is permitted to suppress from defense counsel, pertinent evidence he possesses and for the purpose of examining into which, with a view of using it on the trial, he has been brought into court.

The constitutional right to compulsory process as guaranteed by Section 11 of the Bill of Rights, means not only the issuance and service of a subpoena by which a defense witness is made to appear, but includes the judicial enforcement of that process and the essential benefits of it by the trial court. And with reference to the latter aspect of the subject, a trial court has no more authority to refuse to enforce for a defendant's benefit the production of the evidence available to be procured and for which compulsory process has been issued, than he has to deny the process itself in the first instance. This is so, because it would be an empty right if a defense witness once summoned into court bringing with him knowledge material to the defendant's case, or possessing documentary evidence essential to be examined by defense counsel in order to determine its value as evidence for the defense, could with the court's approval or acquiescence, justifiably assert as a ground for refusal to disclose what he knows, or as ground for refusing to produce what he has, that he had subscribed to an oath of secrecy not to reveal the same without the consent of the prosecuting officers or otherwise, unless there is some legal foundation for standing on such oath of secrecy as a ground of such refusal.

It therefore follows that when the defendant in a criminal case claims his constitutional right to compulsory process for his witnesses, as guaranteed to him by Section 11 of the Bill of Rights, the intent of the Constitution is

that the trial court is under a bounden *duty* to enforce that right for defendant's benefit, as far as in law the same can be enforced. And if the defendant have a right to the enforcement of compulsory process for its witnesses, and to the beneficial enjoyment of that right in a practical way by being allowed to confer and consult with his witnesses after they are in court, with a view to calling them to the stand for the purpose for which they have been summoned into court, it likewise follows that there is no discretion on the part of the trial court to refuse to enforce such a right as is founded on the Constitution itself, because discretion does not exist where there is no power except to act in one way. Jones v. Securities and Exchange Commission (decided April 6, 1936), 56 Sup. Ct. Rep. 654, 80 L. Ed. ____.

Discretion does not exist where there is no power to act except in one way, so where a defendant on trial in a criminal court has demonstrated an organic right in the proper use of available and material evidence in his behalf, there is judicial discretion on the part of the trial judge to deny to the defendant the appropriate and legal use of such evidence, by refusing to enforce its production or disclosure by a duly summoned defense witness, no rule of law or privilege of keeping the wanted evidence secret being made to appear sufficient to support the prosecuting officers' objection to the disclosure or production of the same for the information and guidance of defense counsel in the conduct of their defense for the defendant. The instant case comes squarely within the rule last stated, because all that is demanded in the present case is that the respondent trial judge be directed to order the duly summoned defense witness, R. F. Johnson, to do that which in law he is legally bound to do as a defense witness, namely, confer and ad-

vise with the defense counsel as to his capacity as a potential impeaching witness through the medium of the notes and transcription that he has brought into court as such witness.

The status of secrecy impressed by law upon the testimony adduced before a grand jury in the investigation of criminal charges may not continue after indictment found, adjournment of the grand jury and the arrest or custody of the accused; and the exclusion by a trial judge of a proper use of appropriate evidence of such testimony before the grand jury, produced in response to a *subpoena duces tecum* for legal use in impeaching a state witness who has already testified against an indicted defendant, may in legal effect, amount to a denial of the defendant's organic right to compulsory process for the attendance of witnesses in his favor. The right to compulsory process is intended to be effective within the limitations of law not amounting to a substantial denial of the right. Therefore since the organic right is one designed for the benefit of an accused *at his trial, and prior to his conviction,* and to protect himself against being unjustly convicted, the correction by writ of error of an error committed by the trial court in denying the defendant the beneficial lawful enjoyment of compulsory process that he has issued, may be inadequate to conserve the organic rights of the defendant and of the State to a fair, speedy and legal trial, to the end that organic rights be duly accorded and that justice be administered by due course of law without undue delay and unnecessary retrials at great public expense. See Sections 4 and 11, Bill of Rights, Florida Constitution.

The question involved in this controversy is not one confined to mere error alleged in the admission or excluion of evidence tendered by defendant as part of his trial. If

that were all writ of error and mandamus would be the sole corrective remedy. But the right claimed here is a constitutional one, and one that is necessary to be enjoyed, if at all, *now* while the State's prosecuting witnesses, Poulnot and Rogers, are still subject to cross examination at defendant's hands, in order that by such cross examination defendants' counsel may lay in the trial record a legal basis for later calling the witness, R. F. Johnson, to impeach such state witnesses by showing by him that said witnesses' versions of the transaction as related by them before the Grand Jury in Johnson's presence, and as recorded by him at the time *verbatim,* differ in essential details from the testimony they have given on the trial now going on before the respondent, Judge Dewell, of the Criminal Court of Record of Polk County.

To meet the situation confronting the relators as defendants on trial for a serious offense, the remedy by writ of error, although available, is not so speedy and adequate remedy as relators are entitled to have granted them for the protection of their asserted organic right claimed under Section 11 of the Bill of Rights, therefore the use of mandamus in the nature of a writ of *procedendo* to keep the trial court from departing from the essential requirements of the law, is available and proper. State, *ex rel.* Dillman, v. Tedder, Circuit Judge, *supra;* State, *ex rel* Landis, v. Lewis, *supra.*

The motion to quash the alternative writ of mandamus is denied.

WHITFIELD, C. J., and ELLIS, BUFORD and DAVIS, J. J., concur.

TERRELL, J., agrees to conclusion.

BROWN, J., dissents.

BROWN, J. (dissenting).—I think the motion to quash the alternative writ of mandamus should be granted. I will not delay the prompt decision of this case by attempting to write out my views at length. The command of the writ is, in substance, that the trial court be compelled by this court to order the stenographer who took down the testimony of the witnesses before the grand jury (with the permission, and presumably for the use and convenience of the State's Attorney) to deliver the transcript of the testimony of two of such witnesses to the Clerk of the trial Court for inspection by counsel for defendants. There are some cases tending to support both sides of the general question involved (see 16 Corpus Juris, 801-802), but I think the weight of authority and the sounder reasoning support the contention, made by counsel for the State in behalf of the respondent Judge that the motion to quash the alternative writ should be granted. The reasons for the conclusion I have reached can readily be arrived at by a perusal of the following cases: State v. Petteway, 96 Fla. 74, 117 So. 696; Jenkins v. State 35, Fla. 737, 18 So. 182; Padgett v. State, 64 Fla. 389, 59 So. 946; State v. Rhoads, 81 Ohio St., 397, 91 N. E. 186, 27 L. R. A. N. S. 558, 18 Am. Cas. 415; Havenor v. State, 125 Wis. 104 N. W. 116, 4 Ann. Cas. 1052; In re Montgomery, 110 N. Y. S. 793; Metzler v. U. S. Fed. (2nd) 203; People v. Fusko (Cal.) 192 Pac. 552; Commonwealth v. Gettigan (Mass.), 148 N. E. 113, Board v. State (Tx.) 56 S. W. (2nd) 464. Howard v. Commonwealth (Ky.) 80 S. W. 211.