McNULTY, Judge.
Defendant directly appeals from a robbery conviction and twenty-five year sentence to *495 the State prison. He was jointly tried with another who was involved in the robbery in question.
Appellant assigns as error the denial of his motion for severance.' In the motion for severance appellant alleged that he intended to call his codefendant to the stand as a witness in his behalf. This motion was not supported by any facts relevant to this intention and simply contained the bare allegation of his intention. On this appeal he argues that the denial of this motion was error because it prevented him from exercising his constitutional right to summon witnesses on his behalf.
The state argues that the granting vel non of a motion for severance is discretionary with the trial judge and that the burden of showing an abuse of such discretion is upon appellant. Ordinarily this is a sound contention.[1] But the real issue here is the right to compulsory process; and the question of severance is involved only incidentally to the extent that severance may be the only expedient to protect such right. In such a case the matter of discretion is extremely limited if not entirely eliminated. In State ex rel. Brown v. Dewell (1936), 123 Fla. 785, 167 So. 687, our Supreme Court stated:
“ * * * no amount of judicial discretion, such as is ordinarily vested in the trial judge with reference to matters of evidence and procedure, can supply a defect or want of jurisdiction on the part of the court to proceed outside the limitations of the constitution with respect to a defendant’s constitutional procedural rights under section 11 of the Declaration of Rights to compulsory process and to the beneficial enjoyment of the fruits of that process after it has been issued and served.” (citations omitted)
In reviewing the cases, the right to compulsory process has apparently been subordinated to the right against self-incrimination.[2] At least it has been limited to compelling attendance on the stand and up to the point where the witness invokes his 5th Amendment privilege.[3] But the right to compulsory process is a precious one and no good reason appears to continue to afford it less dignity than any other right guaranteed by the 6th and 14th Amendments of the United States Constitution and by Section 11, Decl. of Rights, Const, of Fla., F.S.A.[4] As noted in Brown, supra, the right includes the “beneficial enjoyment of the fruits of that process” as well as the process itself. Indeed, we view the meaningful totality of such right as being an absolute requisite to any objective and enlightened concept of the truth-finding process.
But the state argues that it’s an exercise in futility to enforce it in this case on the assumption that the codefendant would most certainly invoke his privileges against self-incrimination.[5] This is not a valid assumption. For various reasons a codefendant may be willing to testify at another’s trial when he is unwilling to do so at his own. We won’t speculate on the reasons, and need not, because denial of a severance would preclude even the possibility of his testimony. Furthermore, the full enjoyment of an organic right ought not be at the peril of any assumption whatsoever, much less an invalid one.
Secondly, the codefendant cannot be the sole judge of what may or may not incriminate him. A witness’s refusal to answer under the 5th Amendment privilege will only be sustained where it appears from the questions and their implications, and the setting in which they are asked, that a responsive answer or explanation of the *496 claim of privilege involves a disclosure dangerous to the witness, and will present reasonable grounds for the witness to apprehend a real danger of criminal prosecution.[6] These matters are questions of law for the trial court, upon a voir dire examination, to determine.[7] But in any event, it is well settled, as noted, that the 5th Amendment privilege against self-incrimination does not immunize one from at least responding to compulsory process in the first instance. His appearance in answer to a subpoena can be compelled, and his presence on the stand can be compelled.[8] At that point, if he is entitled to the privilege he may then invoke it. Again, whether he will do so or not should not be left to speculation. But if the witness does invoke his privilege, assuming he has a right to, it should ultimately be in the presence of the trier of fact; and the inferential benefits to the instant defendant, if any, cannot be calculated since, we repeat, it is undisputed that his right to compulsory process includes at least the right to compulsory attendance. This posture of a given case would hardly be possible if the witness (i. e. a codefend-ant) was also then and there on trial.
Finally, it must be remembered that after all, the privilege against self-incrimination is not an absolute right to silence in the literal sense. If it were, a witness could not even be compelled to testify upon a valid grant of immunity. The 5th Amendment privilege only insulates him from the incriminating effect of what he might say or be compelled to say after he invokes the privilege. Thus, even if the trial court makes a determination that the codefendant is entitled to invoke the privilege against self-incrimination, the court in its discretion may nevertheless devise a procedure to both protect the witness-codefendant and, at the same time, compel his testimony for the benefit of the instant defendant.[9] For example, he might first of all grant a severance, either on motion or sua sponte, and then require that the state, as a condition to proceeding against the instant defendant, reveal in camera to the court all evidence it has against the witness-codefend-ant. By requiring the state to reveal its case against the codefendant, in camera as suggested, the witness-codefendant could reasonably be protected from any direct or indirect incrimination from his compelled testimony. That is to say, that at his trial it would be a simple matter for the trial court to exclude his verbatim testimony, and also relatively easy for the court to determine whether the state directly or indirectly gained additional evidence against him as a result of his testimony in the instant case. Mere comparison of the evidence thus known to exist before his testimony, with that adduced after, would put the state hard-pressed to explain inculpa-tory evidence found after the compelled testimony. The burden should be on the state to show that it came upon such evidence independently of, and neither directly nor indirectly from, anything which was adduced from the testimony of the witness.[10]
*497 We conclude then, that the full import of the right to compulsory process may well make it incumbent upon a trial judge to grant a severance when one defendant seeks to compel the testimony of one or more codefendants. We hold,, however, that a defendant who seeks to call a co-defendant as a witness on his behalf cannot, without restriction, precipitate a severance merely on the bare allegation that he is going to call a codefendant as a witness in his behalf. Such a rule would permit a defendant to inconvenience the Court and the prosecution on whim. For one thing, if the severance is granted there would be no way of compelling him to call the witness after all. Furthermore, there would be no way of knowing whether the evidence sought to be elicited would be relevant or material to his defense and if so, whether it might be of “some substantial use to him”.[11]
Now when we say that it is important to consider whether the evidence sought to be elicited from a codefendant is of “some substantial use” to a defendant, we perceive a clear distinction between evidence which is exculpatory and that which is merely beneficial. Almost any evidence, in the hands of a skilled attorney, can be put to some beneficial use. The evidence we are talking about here, i. e. that which would justify the granting of a severance to make it available, must be in the nature of exculpatory evidence as distinguished from merely beneficial evidence. Mere knowledge on the part of the codefendant that the defendant has led an exemplary life in the past, for example, might well be of some benefit to a defense, but it would not necessarily be exculpatory to any substantial degree. In addition, it is unlikely that a codefendant would be the only available witness to such fact if, in truth, it is a fact; and if it isn’t a fact a defendant can’t be heard to complain that a codefendant is not available to testify to it.
On the other hand, the codefendant may be the only person in the world, save the instant defendant, who knows that he, the witness-codefendant, is the sole perpetrator of the crime charged if, in fact, that is the truth; or, the witness-codefendant may be possessed of knowledge of matters otherwise clearly exculpatory to the defendant. These are matters which go beyond a mere benefit to the defendant, and without which his participation in the adversary proceeding might be sterile.
At this point we interpose to emphasize that it’s immaterial that what the defendant intends to elicit from a codefend-ant might not actually be elicited, or that the witness-codefendant, on voir dire by the court if he claims his privilege, denies or refutes the defendant’s proffer. Such a situation is always possible with any witness under subpoena. The question is not whether the instant defendant can elicit the desired testimony from the sought witness, but whether he has all reasonable opportunity to try. He may well choose not to try if he finds out the witness will not support his position; but he may choose, and indeed it is his right, to attempt to establish hostility of the witness and then use his right of confrontation, including effective cross-examination, to rehabilitate or impeach the witness-codefendant by establishing or laying a predicate to show, at least inferentially, the truth of the matters sought to be elicited.
*498 A defendant, then, has an absolute right to call a codefendant as a witness, and such right cannot be diluted because the codefendant is either likely to invoke his privilege against self-incrimination or is liable to refuse or fail to exculpate the defendant. But if such defendant seeks a severance as here, so that his right to compulsory process may be practicably accomplished, he ought to be required at least to set forth the nature of the testimony he seeks to elicit from the codefendant in order that its relevance, competence, and relative value may be determined; and further, he ought to be required to demonstrate that such evidence is not unduly cumulative. The trial judge should also be satisfied, in his discretion, that the severance is sought in good faith and not as a vexatious device. If upon such inquiry the trial judge determines that the testimony sought to be elicited from a codefendant would be competent and relevant to defendant’s case, that it is reasonably calculated to be of some substantial use to him and that it is not cumulative, the judge should grant a severance since it doesn’t appear that there is any other way the defendant’s right to effective compulsory process may be afforded him to the extent it is legally possible to do so. At the same time, the door is left open for such necessary discretionary, protective procedures as would insulate the witness-codefendant at Ms trial from incriminatory testimony which he may now be compelled to give. Such severance would be granted not because of any right of the instant defendant to severance, but because it is the first expedient to his right of compulsory process.
In this case, it’s true, the defendant sought a severance on the bare allegation that he intended to call his codefendant as a witness. But because of the novelty of this question he was not guided by any precedent which would have required the predicate suggested above. He ought not be prejudiced because of this. We therefore remand the cause with directions to the trial court to determine, after hearing if necessary, whether the evidence sought to be elicited by the defendant from his codefendant would have been relevant to his defense, of substantial use to him and not unduly cumulative. Such determination is facilitated in this case since it will be after the trial hereof, and the court can more easily evaluate the prayed-for evidence in the light of all evidence actually adduced at trial in ascertaining whether such prayed-for evidence would have been materially substantial, or reasonably susceptible of the prima facie likelihood that the jury may have reached a different conclusion but for its absence. Upon an affirmative finding, a denial of the severance, and thus a denial in effect of the beneficial enjoyment of compulsory process, was a fundamental infirmity irrevocably embarrassing the truth-finding proceedings. In such case the conviction should be set aside and a new trial awarded.
Unless the trial judge makes the affirmative determination referred to above, however, no new trial ought be granted on any other grounds. A review of the record herein reflects that all other points raised by defendant on appeal are without merit.
Affirmed, but remanded with directions.
LILES, A. C. J., and MANN, J., concur.

. See, e. g., Roberts v. State (Fla.1964), 164 So.2d 817.

. See 98 C.J.S. Witnesses § 436.

. Id,

. See Washington v. Texas (1967), 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019, and State ex rel. Brown v. Dewell, supra.

. See, Gorin v. United States, 1st Cir. (1963), 313 F.2d 641.

. 98 O.J.S. Witnesses § 437b, at p. 256, et seq., and State ex rel. Feldman v. Kelly, (Fla.1954), 76 So.2d 798.

. State v. Kelly, id, and cases cited therein.

. 98 C.J.S. Witnesses § 436, at p. 251, notes 46 and 47.

. We recognize, of course, that the witness’s fears may he concerned with criminal prosecutions in other jurisdictions from which the instant court would he powerless to insulate him. In such case, to the extent that his testimony might incriminate him elsewhere and beyond the protection of the court, his testimony could not be compelled in the face of his invocation of the privilege. The compelled testimony we contemplate here is that which relates solely to the charge before the court, of which the witness is accused along with the instant defendant, and which is unrelated to matters that may constitute the basis for criminal prosecution elsewhere.

.It may be, too, that the codefendant could he put on trial first and, if acquitted, the question of self-incrimination may become moot. But this is a hazardous course, because if he is convicted he may nevertheless be entitled to invoke *497 his privilege until all avenues of appeal and review have been exhausted. See, e. g., 98 C.J.S. Witnesses § 437, n. 79 at p. 254. This could result in an unreasonable delay in the proceedings against the instant defendant.

. See, e. g., United States v. Tomaiolo (2d Cir. 1967), 378 F.2d 26; and Barbee v. Warden (4th Cir. 1964), 331 F.2d 842. While these cases deal with pre-trial discovery, analogously the relative value of the evidence sought was considered to be an important consideration in evaluating the validity of a claimed right to such evidence.