661 So.2d 1287 (1995)
Carlton Bernard TAPE, Appellant,
v.
STATE of Florida, Appellee.
No. 94-2122.
District Court of Appeal of Florida, Fourth District.
November 1, 1995.
*1288 Richard L. Jorandby, Public Defender, and Joseph R. Chloupek, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.
PER CURIAM.
This is an appeal from a final judgment of conviction and sentence for three murders and one attempted murder. The appellant raises seven points for reversal, all of which we find were either not error or harmless error. While we agree with the dissent that a criminal defendant generally has a right to have a subpoena enforced and attendance of a witness compelled, in this case we hold the right was waived. Even constitutional rights may be waived by a defendant. Butterworth v. Fluellen, 389 So.2d 968 (Fla. 1980) (waiver of right to 180-day speedy trial period by defendant who is granted motion for continuance of trial).
Here, the court asked appellant's counsel at two separate points in the trial, on appellant's request to have the court issue a writ of bodily attachment for Ms. Reagan, whether appellant would actually call the witness to testify. Each time, counsel gave an equivocal response, to the effect that it would depend on what testimony was given by the victim (and co-perpetrator) Richmond Johnson. While Ms. Reagan had no right to disregard a subpoena served upon her, the issuance of a writ of bodily attachment may be denied, in the court's discretion, if such issuance would be an act of futility. The trial court need not impose the extreme measure of having a deputy take a witness into custody, bring her forcibly before the court, or hold her in custody until she might be called, only to have counsel say "you can let her go now; we will not call her as a witness." While appellant had a right to have the subpoena enforced, he waived that right by failing to respond affirmatively that he would call Ms. Reagan as a witness. Thus, under the facts of this case, he cannot now claim reversible error for the trial court's failure to enforce the witness subpoena.
We sua sponte vacate the conviction for attempted first degree murder based on State v. Gray, 654 So.2d 552 (Fla. 1995), *1289 which applies to all cases pending on direct review or not yet final. While this issue was not raised, no one may be convicted of a nonexistent crime. See Achin v. State, 436 So.2d 30, 31 (Fla. 1982). In Gray, the supreme court held that there is no crime of attempted felony murder. In this case the defendant was convicted of attempted first degree murder, but the state argued both felony murder and premeditated murder to the jury. In Mills v. Maryland, 486 U.S. 367, 376, 108 S.Ct. 1860, 1866, 100 L.Ed.2d 384, 395 (1988), the United States Supreme Court articulated the well settled rule that a criminal jury verdict must be set aside if it could be supported on one ground but not on another and the reviewing court is uncertain which of the two grounds was relied upon by the jury in reaching its verdict. It is not possible with the evidence and argument in this case to determine which theory the jury used as its basis for the conviction. Therefore, we are compelled to reverse the conviction.
AFFIRMED IN PART; REVERSED IN PART.
GUNTHER, C.J., and POLEN, J., concur.
WARNER, J., dissents with opinion.
WARNER, Judge, dissents with opinion.
In the appellant's trial for a triple homicide, the trial court refused to issue a writ of bodily attachment (more commonly referred to as a bench warrant) to enforce the appearance at trial of a subpoenaed defense witness. This is an error of constitutional proportion, and I would hold that the error was not harmless beyond a reasonable doubt.
At the commencement of the appellant's trial, defense counsel informed the court that a witness, one Melissa Reagan, had been subpoenaed for trial and had failed to appear at the commencement of trial. Based upon the process server's observations and delivery of the subpoena, counsel believed that Reagan would not honor the subpoena. Therefore, the defense requested a writ of bodily attachment to bring her before the court so that the defense could use her as a witness. The trial court balked at the suggestion, inquiring of counsel whether he could represent that he would call her if the court ordered her appearance. Since the taking of testimony had not yet begun, counsel would not state firmly that he would definitely call her. However, he proffered that Reagan would impeach the testimony of a surviving victim of the murders, Richmond Johnson. Johnson's testimony would implicate the appellant in the shootings. However, defense counsel related that Johnson had told Reagan that the appellant didn't have anything to do with the incident. Reagan was the girlfriend of the appellant's co-defendant.
A day later, after the process server testified to his service of the subpoena on Reagan, the court again asked whether counsel would call Reagan. Counsel stated, "I can't represent that I am going to one hundred percent call her as a witness. I can only tell you that depending on what Richmond Johnson says in answer to the state's questions, in response to my questions." Because counsel had waited until the beginning of trial and also because he refused to commit to calling her, the trial court denied the motion.
When the state rested its case, the defense again renewed its motion to have the subpoena enforced. The court inquired whether the defense had tried to contact Reagan, and counsel told the court that he did not have a telephone number for her. The defense then put the defendant through a colloquy wherein the defendant affirmed that due to the court's ruling, the defendant decided not to have any other witnesses testify.
Article I, Section 16(a) of the Florida Constitution provides that an accused "shall have the right to have compulsory process for witnesses." The seminal case construing this provision is State v. Dewell, 123 Fla. 785, 167 So. 687 (1936):
The right of a defendant in a criminal case to compulsory process for witnesses in his behalf means something more than the barren and sterile issuance of a paper by which the witness is made to appear, but is permitted to suppress from defense counsel, pertinent evidence he possesses and for the purpose of examining into *1290 which, with a view of using it on the trial, he has been brought into court.
The constitutional right to compulsory process as guaranteed by section 11 of the Declaration of Rights means not only the issuance and service of a subpoena by which a defense witness is made to appear, but includes the judicial enforcement of that process and the essential benefits of it by the trial court. And with reference to the latter aspect of the subject, a trial court has no more authority to refuse to enforce for a defendant's benefit the production of the evidence available to be procured and for which compulsory process has been issued, than he has to deny the process itself in the first instance... .
It therefore follows that when the defendant in a criminal case claims his constitutional right to compulsory process for his witnesses, as guaranteed to him by section 11 of the Declaration of Rights, the intent of the Constitution is that the trial court is under a bounden duty to enforce that right for defendant's benefit, as far as in law the same can be enforced. And if the defendant have a right to the enforcement of compulsory process for his witnesses, and to the beneficial enjoyment of that right in a practical way by being allowed to confer and consult with his witnesses after they are in court, with a view to calling them to the stand for the purpose for which they have been summoned into court, it likewise follows that there is no discretion on the part of the trial court to refuse to enforce such a right as is founded on the Constitution itself, because discretion does not exist where there is no power except to act in one way. Jones v. Securities and Exchange Commission (decided April 6, 1936), [298 U.S. 1], 56 S.Ct. 654, 80 L.Ed. [1015].
Dewell, 123 Fla. at 800-02, 167 So. at 693. Later, in Trafficante v. State, 92 So.2d 811 (Fla. 1957), the court again reiterated the fundamental nature of the right:
The right of an accused in a criminal case to compulsory process for attendance of witnesses on his behalf, as we have seen, stems from the express terms of our constitution. This provision was inserted because of the fundamental unfairness which results from placing a man on trial on a criminal charge and denying him the means to compel the attendance of witnesses, within the jurisdiction of the court, who are in possession of material facts which show or tend to show his innocence of the charge.
Id. at 815. Following Dewell, the court in Green v. State, 377 So.2d 193, 202 (Fla.3d DCA 1979), held that a trial court should determine the relevancy of the evidence and, if relevant, then the trial court is duty bound to enforce the defendant's right to compulsory process. See also Krantz v. State, 405 So.2d 211 (Fla.3d DCA 1981).
The evidence against the appellant consisted of the testimony of Richmond Johnson and Detective Brady. Johnson testified as to the appellant's part in the crime. However, he had never mentioned defendant in a conversation he had with the police on the night of the murders while he was being treated in the hospital. It was only during his recovery that he gave the police a full statement as to who was involved in the shooting. Brady related the substance of a confession which the appellant had made concerning his part in the crimes. This confession was not taped, and the defense counsel sought to impeach Brady on several points, including some prior inconsistent statements. In essence, the defense claimed that Brady did not accurately recount his conversations with the appellant and that the appellant did not admit to his participation in the crimes. Since Johnson was one of the state's two star witnesses regarding the appellant's involvement in the crime, Reagan's testimony that Johnson told her that the appellant had nothing to do with the incident would serve as strong impeachment, particularly since she was the girlfriend of the co-defendant and would not appear to have a motive to help the appellant. Although both Johnson's and Brady's testimony provided substantial evidence against the appellant, I cannot conclude that the failure to enforce the subpoena on Reagan was harmless beyond a reasonable doubt under the standard of State v. *1291 DiGuilio, 491 So.2d 1129 (Fla. 1986). I would reverse.