215 So.2d 736 (1968)
Jose Manuel SOSA, Appellant,
v.
STATE of Florida, Appellee.
Richard Austin GREENE, Appellant,
v.
STATE of Florida, Appellee.
Nos. 35131, 35132.
Supreme Court of Florida.
November 5, 1968.
Rehearing Denied December 12, 1968.
*737 Arnold D. Levine, Tampa, Tobias Simon and Alfred Feinberg, Miami, for appellants.
Earl Faircloth, Atty. Gen., and David U. Tumin, Asst. Atty. Gen., for appellee.
PER CURIAM.
After a careful review of the voluminous evidence here we are of the view that the evidence was definitely lacking in establishing beyond a reasonable doubt that the defendants committed murder in the first degree, and that the interests of justice require a new trial. The judgments are accordingly reversed and remanded for a new trial.
It is so ordered.
THOMAS, DREW, THORNAL and ERVIN, JJ., concur.
CALDWELL, C.J., and ROBERTS and ADAMS, (Ret.), JJ., dissent.
ERVIN, Judge (concurring specially):
The appellants, Jose Manuel Sosa and Richard Austin Greene, were indicted on September 7, 1965 for the murder of Nicanor Martinez. The indictment charged that Sosa, from a premeditated design to effect the death of Nicanor Martinez did hire, procure, aid, abet and counsel Richard Greene to murder said Nicanor Martinez. Greene was charged with the premeditated murder of Nicanor Martinez by shooting him with a pistol. On November 25, 1965 after a joint trial in the Circuit Court for Hillsborough County, Florida, the jury returned verdicts finding both appellants guilty of first degree murder, without recommendation of mercy, and the court sentenced each appellant to death.
On February 22, 1966 appellant Greene, in proper person, filed his notice of appeal. Notice of appeal for appellant Sosa was filed by his court-appointed counsel on February 23, 1966. Each notice of appeal was filed while motions for new trial were pending. On June 27, 1966 the trial court entered orders striking the motions for new trial. Subsequently, each appellant filed interlocutory appeals from the orders striking their respective motions for new trial, and by petitions for mandamus sought to compel the trial court to conduct a hearing on their motions for new trial. On September 13, 1966, this Court dismissed the appeals and denied mandamus without opinion. Assignments of error for the purpose of perfecting the present appeals were filed on September 27, 1966.
Pursuant to an order of this Court, these appeals were consolidated for the purpose of briefing, the use of the transcript of record and for oral argument. This opinion will be determinative of both appeals.
The issues presented for determination by this Court, stated in inverse order, are: (1) Whether the trial court's action in striking appellants' motions for new trial is sustainable on grounds that appellants abandoned said motions by filing notices of appeal. (2) Whether the lower court erred in admitting into evidence an inculpatory admission of appellant Greene overheard by police during a telephone call allowed him after his arrest. (3) Whether appellants were entitled to separate trials. (4) Whether the lower court erred in refusing either to enforce production of a letter pursuant to a subpoena issued on behalf of appellant Sosa, or to examine said letter to determine whether it was privileged. (5) Whether the lower court erred in admitting into evidence certain personal belongings of appellant Greene seized from the home of another in a search undertaken without a warrant and without the express consent of Greene. (6) Whether reversible error was committed by the lower court in admitting into evidence certain extrajudicial statements of witnesses for the state. Other errors assigned, *738 but not briefed and argued by appellants, do not warrant discussion. We consider the questions presented in the order stated.
Appellants have challenged an order of the trial court striking their motions for new trial. The record reveals that notices of appeal were filed by appellants while their motions for new trial were pending in the trial court. The principle is clearly established in this state that the filing of a notice of appeal in a criminal proceeding while a motion for a new trial is pending constitutes an abandonment of the motion for new trial and thereby vests exclusive and complete jurisdiction in the appellate court. See State ex rel. Faircloth v. District Court of Appeal, Third District, 187 So.2d 890 (Fla. 1966); Harrell v. State, 197 So.2d 505 (Fla. 1967).
Appellants contend that the operation of the "abandonment rule" as above described is arbitrarily discriminatory and onerous to appellants since, as incarcerated, indigent defendants, they could not reasonably be expected to be informed of the loss of rights resulting from the filing of notices of appeal. We do not agree. The procedural rule under attack does not operate to cause forfeitures peculiar to incarcerated indigent defendants. There is no similarity between the procedure condemned in Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), and Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and the procedure here involved. The rule of law under review is designed to foster and implement an orderly procedure for reviewing criminal convictions. In the absence of a showing that it operates to precipitate an unreasonable and discriminatory forfeiture of rights, we are reluctant to impede its intended purpose.
The record indicates that the trial court admitted into evidence an inculpatory statement made by appellant Greene and overheard by a police officer during a telephone call allowed to Greene subsequent to his arrest. No electronic listening device or telephone tapping or "bugging" was involved. The police officer simply overheard Greene's telephone conversation because he was nearby when Greene spoke on the telephone. The telephone used was located in a common hallway in the jail and the officer who overheard and testified to the conversation was standing approximately ten feet from the appellant, waiting for him to finish in order to return him to the proper security. An attack is lodged against the admissibility of this statement on the ground that it was overheard by the police officer after Greene had been placed in custody and subsequent to his indicated, but unacknowledged and unsatisfied, desire to be assisted by the services of a lawyer. A challenge grounded on such facts does not disclose a violation of Greene's constitutional rights. The limitations circumscribing the rights of appellant Greene in the present case are distinctly stated in Miranda v. State of Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966):[1]
"In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. * * * Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."
In the present case, Greene's inculpatory statement was entirely voluntary and was *739 not compelled in any way through a process of questioning or interrogation conducted by state officers. We conclude that it was properly admitted into evidence.
Appellant Sosa contends that the trial court committed reversible error in denying his request for a separate trial. The principle is well established in this state that a motion for severance is addressed to the sound discretion of the trial court. Suarez v. State, 95 Fla. 42, 115 So. 519 (1928); Manson v. State, 88 So.2d 272 (Fla. 1956); Rankin v. State, 143 So.2d 193 (Fla. 1962). Before this Court will disturb a ruling denying severance, it must clearly appear that the challenged ruling constitutes an abuse of the discretion vested in the trial court and the burden of establishing such abuse rests with the party attacking the ruling. Manson v. State, supra; Jackman v. State, 140 So.2d 627 (Fla.App. 1962).
The record is devoid of any showing that appellant Sosa was prejudiced by the introduction of evidence competent only to the charge against his co-defendant. Although the trial court permitted testimony before the jury relating to admissions by Greene which implicated Sosa, the record clearly reveals that such evidence was competent as to Sosa under the conspiracy nature of the charges brought by the state. As to evidence concerning admissions made by Greene subsequent to the termination of the circumstances of the alleged conspiracy and therefore incompetent as to Sosa, there is no showing that such evidence was prejudicial or in any way injurious to Sosa. See Saurez v. State, supra. This conclusion is buttressed by the fact that the trial court carefully instructed the jury that this evidence was not to be considered in any way related to the charge against appellant Sosa.
Appellant Sosa asserts that the trial court's refusal to grant a severance precluded Sosa from exercising his right to call his co-defendant as an exculpatory witness. In support of this contention, reliance is placed principally upon United States v. Echeles, 352 F.2d 892 (7th Cir.1965). In Echeles there was a substantial showing that the testimony of the co-defendant could reveal exculpatory evidence since the record showed that the co-defendant had made pre-trial statements exculpatory of defendant Echeles. In a situation such as this, the interest and constitutionally secured right of a co-defendant in remaining silent may well be antagonistic to the interest of a joint defendant in presenting the exculpatory testimony of the co-defendant, and separate trials may be necessary to eliminate the conflict and preserve both interests. See United States v. Gleason, 259 F. Supp. 282 (S.D.N.Y. 1966). Previous decisions of this Court indicate that a severance may be required when the interests or defenses of co-defendants are antagonistic. See Suarez v. State, supra; Roberts v. State, 164 So.2d 817 (Fla. 1964). In the present case, however, there is no positive showing that the testimony of Greene would reveal exculpatory evidence on behalf of Sosa or that the interests of the co-defendants were actually antagonistic. The rule is clear that mere speculation or apprehension that the interests or defenses of co-defendants are antagonistic is not sufficient grounds for concluding that the trial court abused its judicial discretion by denying severance. See Sawyer v. State, 100 Fla. 1603, 132 So. 188 (1931). The mere preclusion of the right to call a co-defendant because two defendants are tried jointly and the co-defendant may remain silent is not enough to warrant severance unless coupled with a showing the testimony of the co-defendant would be exculpatory.
Appellant Sosa further contends that separate trials were necessary in order to reconcile conflicting rights of the co-defendants stemming from Sosa's right to comment on the failure of Greene to testify. We find this contention to be without merit. We are aware of no commanding authority for the proposition that in order to comply with the demands of a fair trial an accused is entitled to comment on the failure of his co-defendant to take the stand.
*740 We hold that the record in the present case does not present sufficient grounds to warrant the conclusion that the trial court abused its discretion in denying requests for separate trials.
The record reveals that Gordon F. MacCalla, County Solicitor for Polk County, was called as a witness for the defense. Pursuant to a subpoena duces tecum, this witness had brought certain records and his personal office file relating to the case of Billy James Kane. MacCalla testified that an escape charge against said Kane had been passed to the absentee docket. The witness related that prior to the time the case was absenteed, he received a phone call from the State Attorney for Hillsborough County, informing him that some of Kane's relatives were cooperating in a case and that the name "Martinez" was mentioned somewhere in the conversation or in a follow-up letter. The witness also related that he had received a call from an officer in Tampa stating that Tampa officials would like for MacCalla to do anything he could for Kane, in view of the fact that his relatives were cooperating in regard to several unsolved crimes. Upon further questioning, the witness revealed that after the case against Kane was absenteed, he received some correpondence from the State Attorney which related to their previous telephone conversation. The witness objected to producing this correspondence on the basis that it was part of his personal work files and thus was confidential and privileged. Counsel for the accused then requested the court to make an in camera examination of the correspondence. The state objected to producing the correspondence on the basis of materiality and on the grounds that it constituted work product of the prosecutor. The court refused to enforce production or to order an in camera examination of the subpoenaed correspondence and this ruling is asserted as error by appellants.
The appellants contend that the trial court's ruling deprived them of their constitutional right to have compulsory process for the attendance of witnesses in their favor. We are inclined to agree with the contention of appellants. The role of a subpoena duces tecum as an element of the constitutional right of defendant in a criminal trial to have compulsory process for the attendance of witnesses in his favor was established in this state in State ex rel. Brown v. Dewell, 123 Fla. 785, 167 So. 687 (1936):
"(6) The right of a defendant in a criminal case to compulsory process for witnesses in his behalf means something more than the barren and sterile issuance of a paper by which the witness is made to appear, but is permitted to suppress from defense counsel, pertinent evidence he possesses and for the purpose of examining into which, with a view of using it on the trial, he has been brought into court." (At 693.)
In Brown, supra, mandamus was brought to compel production of a court reporter's notes of testimony given at a grand jury hearing. The court reporter appeared as a witness for the defendant in response to a subpoena duces tecum and his notes were sought to be utilized to impeach a witness for the prosecution. This Court denied a motion to quash the alternative writ, noting that the documents sought to be inspected were not in the possession of the prosecuting authorities. The Court concluded:
"Discretion does not exist where there is no power to act except in one way, so where a defendant on trial in a criminal court has demonstrated an organic right in the proper use of available and material evidence in his behalf, there is no judicial discretion on the part of the trial judge to deny to the defendant the appropriate and legal use of such evidence, by refusing to enforce its production or disclosure by duly summoned defense witness, no rule of law or privilege of keeping the wanted evidence secret being made to appear sufficient to support the prosecuting officers' objection to the disclosure or production of the *741 same for the information and guidance of defense counsel in the conduct of their defense for the defendant. * * *" (At 693.)
Although the Brown decision dealt with the particular problem of a defendant's right to inspect grand jury testimony for the purpose of impeaching a state's witness, we think the principle emerging from that decision is controlling in the present case. In the instant case, as in Brown, supra, we are not dealing with the propriety and extent to which a defendant is entitled to compel the discovery of information in the possession and control of prosecuting officials on the basis that such information will aid defendant in preparing his defense. Compare McIntosh v. State, 139 Fla. 863, 192 So. 183 (1939). Rather, we are concerned solely with the scope of a defendant's right during trial to obtain and make use of relevant and material evidence which is in the possession of a witness appearing in his behalf; a consideration, which as noted in Brown, supra, touches on a defendant's constitutional right to the compulsory attendance of witnesses in his favor. We need not here explore the full course of this important difference. We simply conclude in the present case, as in Brown, there does not exist a sufficient basis or privilege to justify a blanket suppression of the subpoenaed documents. In reaching this conclusion, we are not unmindful that as a matter of public policy, some secrecy should be accorded the private working files of the subpoenaed witness in the present case for reasons not dissimilar to those favoring the preservation of the secrecy of grand jury proceedings. In the face of this need for preserving secrecy, a defendant's right to the disclosure of evidence does not embrace an unbridled authority to inspect all the documents possessed by the witness. In such a situation, a defendant's right to disclosure at trial must be discriminately applied and only extends to subpoenaed materials shown to possess evidentiary value, relevant and material to his defense.
In the present case, we believe appellants initially set up a sufficient showing of the materiality of the correspondence sought to be reached by the subpoena to warrant an in camera examination of the correspondence by the trial judge for the purpose of making a final determination of its relevancy and materiality. See Trafficante v. State, 92 So.2d 811 (Fla. 1957); Vann v. State, 85 So.2d 133 (Fla. 1956). Disclosure of the particular correspondence in the present case was sought for the purpose of providing evidence of some form of an agreement or "deal" between the state attorney and witnesses who had testified for the state. The witnesses for the state had previously denied that any agreement or "deal" was made for their testimony. This fact, coupled with witness MacCalla's testimony concerning the disposition of the escape charge against Billy Kane, a relative of the witnesses appearing for the state, and the further reference in MacCalla's testimony to his contact with Tampa authorities, including the state attorney, in relation to the disposition accorded the Kane case, was sufficient to establish a predicate which warranted an in camera inspection by the trial court of the particular correspondence in question.
Upon an in camera inspection, the trial court properly could have determined whether the subpoenaed correspondence possessed sufficient evidentiary value to entitle appellants to make use of such correspondence in presenting their respective defenses. We hold that the trial court erred in failing to adhere to this procedure in the instant case.
Because of the final disposition of this appeal on the grounds disclosed infra, we do not now deem it necessary to decide whether the error committed by the trial court as stated above was sufficient in itself to warrant a reversal of the judgment in this case.
The appellants next contend that the trial court erred in admitting into evidence certain personal belongings of Richard *742 Greene which were seized from the home of Mae and John Turner pursuant to a search undertaken without a search warrant and without the express consent of Greene. We find this contention to be without merit.
The relevant test of legality of a search is one of reasonableness which can only be measured against the facts and circumstances of each case. See United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). In this case, the record discloses that the items seized and admitted into evidence were discovered as a result of a search of the Turner home, conducted pursuant to the free and voluntary consent of Mae Turner, an owner-occupant of the premises. Although Greene had visited the Turner home on several occasions prior to the search, there is no shred of evidence in the record suggesting that the Turners had surrendered any portion of the premises to the sole occupancy, use and possession of the appellant. Nor is there any showing that appellant Greene exercised any control over access to the searched premises. Under these circumstances, we hold that the discovery and seizure of Greene's personal belongings as a result of a search conducted with the free and voluntary consent of one who was vested with the undisturbed control and possestion of the searched premises was not an unreasonable encroachment on appellant Greene's constitutionally protected right of privacy. In this situation, Greene's express consent was not necessary in order to validate the search and subsequent seizure of the items in question. See Maxwell v. Stephens, 348 F.2d 325 (8th Cir.1965), cert. denied 382 U.S. 944, 86 S.Ct. 387, 15 L.Ed.2d 353; Rees v. Peyton, 341 F.2d 859 (4th Cir.1965); United States ex rel. McKenna v. Myers, 232 F. Supp. 65 (E.D.Penn. 1964), affirmed D.C., 342 F.2d 998, cert. denied 382 U.S. 857, 86 S.Ct. 111, 15 L.Ed.2d 95; Fredricksen v. United States, 105 U.S.App. D.C. 262, 266 F.2d 463 (1959); Woodard v. United States, 102 U.S.App.D.C. 393, 254 F.2d 312 (1958), cert. denied 357 U.S. 930, 78 S.Ct. 1375, 2 L.Ed.2d 1372; cf. United States v. Eldridge, 302 F.2d 463 (4th Cir.1962), and cases cited therein; compare Baugus v. State, 141 So.2d 264 (Fla. 1962), cert. denied 371 U.S. 879, 83 S.Ct. 153, 9 L.Ed.2d 117; Irvin v. State, 66 So.2d 288, 293 (Fla. 1953), cert. denied 346 U.S. 927, 74 S.Ct. 316, 98 L.Ed. 419.
We come now to the critical question of whether reversible error was committed by the introduction into evidence of certain extrajudicial statements of two witnesses for the state.
The record reveals that Nicanor Martinez was shot to death in his home during the early morning hours of August 23, 1965. In order to substantiate the charges contained in the indictment of appellants for this homicide, the state relied extensively on the testimony of Mae Turner and her daughter, Mary Kane. Both Mae and Mary were crucial witnesses for the state since their testimony sought to account for many of the activities of appellant Greene both prior and subsequent to the occurrence of the homicide in question. The testimony of both witnesses also was instrumental in providing evidence of the relationship between the activities of appellant Greene and those of appellant Sosa.
After extensive cross-examination designed almost entirely to impeach the credibility of these witnesses, the following events occurred.
Mary Kane was recalled by the state and allowed, over objection, to testify as to statements made by her to F.B.I. Agent Bob Lally on August 23, 1965. The admitted portion of this testimony was substantially as follows:
"I told Mr. Lally all about the conversations between Dick and I that morning, and about him going and sitting down to the table and eating, and about it making me sick, and I told him that he [Greene] had told mother he had killed the two people and I told him that Dick [Greene] wanted to borrow some money from me *743 to leave town, and I told Mr. Lally I had talked to Mr. Larson on the phone and I told him that I was very concerned and worried over this situation. That is about the extent of our conversation."
* * * * * *
"I told him that Dick had a list of phone numbers and that he was trying very hard to get in touch with Manuel to get his money, and that Dick had said he wanted to contact Manuel before he left."
Concerning the foregoing testimony, the trial judge instructed the jury to the effect that the testimony of the witness had not been offered to prove the facts or substance of what was stated, but only to prove that the witness made such statements at the time that she said she made them.
At the conclusion of the foregoing examination of Mary Kane, F.B.I. Agent Bob Lally was recalled by the state and asked to relate what Mary Kane told him in the course of their conversation on August 23, 1965. Agent Lally testified that:
"Mary Kane advised me that Richard Greene had appeared at her house and related to her mother, Mrs. Turner, that he  meaning Richard Greene  had  Richard Greene related to Mrs. Turner that he had just killed two people, stating that these people were relatives of Manuel."
After admonishing the jury that the statements testified to by witness Lally were not to be considered as evidence of the truth of the substance of the conversation, but merely to establish that Mary Kane made these statements to Mr. Lally at the time at which she testified they were made, the court, over objection, permitted agent Lally to relate statements made to him by Mae Turner in a telephone conversation allegedly transpiring on the morning of August 23rd. Agent Lally testified that Mae Turner called and informed him that Greene had told her that "he had just killed two people." A similar limiting instruction was given as to this testimony.
The appellants contend that the trial court erred in admitting these extrajudicial statements of the witnesses into evidence.
The rule governing the admissibility of extrajudicial statements for the purpose of corroborating a witness' testimony was aptly stated by this court in Van Gallon v. State, 50 So.2d 882 (1951):
"The question arises whether the effect of the ruling was the bolstering of the testimony of the witness, which under the general rule may not be done in this way, or whether such procedure was justified because there was sufficient indication of impeachment by the appellant on the ground that there had been some late fabrication to meet the exigencies of the case.
"We recognize the rule that a witness' testimony may not be corroborated by his own prior consistent statement and the exception that such statement may become relevant if an attempt is made to show a recent fabrication. The exception is based on the theory that once the witness's story is undertaken, by imputation, insinuation, or direct evidence, to be assailed as a recent fabrication, the admission of an earlier consistent statement rebuts the suggestion of improper motive and the challenge of his integrity."
In the present case, the record reveals that counsel for appellants sought to impeach both Mary Kane and Mae Turner by questions designed to infer that their testimony on direct examination was obtained as the result of promises by state officials to provide favorable assistance in the disposition of an escape charge pending against the husband of Mary Kane. We find that there are sufficient facts to support a conclusion that the cross-examination adopted by the appellants was, at least in part, grounded on an attempt to show or insinuate that the witnesses' testimony *744 was the product of a motive to fabricate, which motive, in turn, was inferred to be created and fostered by state promises of leniency for an incarcerated relative of the witnesses. Compare Jackman v. State, 140 So.2d 627 (Fla.App. 1962). We also conclude the extrajudicial statements described above were uttered prior to the existence of this particular motive to fabricate.
The appellants recognize the exception to the general rule as stated in Van Gallon, supra, and Jackman, supra. The appellants argue, however, that this exception to the general rule is not applicable to the facts in the present case. Appellants contend that the extrajudicial statements of Mary and Mae were made at a time when both declarants were influenced by other motives to supply false information, and the presence of such other motives precludes operation of the exception.
In support of this contention, appellants assert that at the time of the alleged conversations with Agent Lally both Mary and Mae were propelled by a fervent desire to secure favorable disposition of the escape charge against Mary's husband and that this hope of favoritism could best be fostered and secured by supplying information which might possibly yield convictions of appellants, irrespective of whether such information was true. Appellants further argue that due to the fact that the witnesses themselves were clearly implicated in several crimes, they were motivated at the time of the conversations in question to supply information to the authorities in order to obtain immunity from prosecution. Since the extensive cross-examination of the witnesses also revealed these impeaching circumstances, appellants conclude that the trial court committed reversible error in ruling the statements to be admissible.
In harmony with principles regarding the admissibility of testimony in general, questions concerning the admissibility of extrajudicial statements for the purpose of sustaining or rehabilitating a witness who has been impeached by the inference of a recent motive to fabricate are largely addressed to the sound discretion of the trial court, whose ruling should not result in reversal on appeal except when there has been a prejudicial abuse of discretion. See Annot., 75 A.L.R.2d 909 (1961); 98 C.J.S. Witnesses § 648 (1957). In the present case, the record contains ample evidence to justify the conclusion that the extrajudicial statements of both witnesses antedated the existence of the dispelling influence created by the inference that the witnesses' testimony in chief was secured and motivated by state promises of favoritism concerning the disposition of the escape charge pending against Mary Kane's husband. This being the case, the statements were relevant in point of time for the purpose of rebutting the inference that the witnesses' testimony at trial was the product of a recent fabrication.
In reaching this conclusion, we do not ignore appellants' contention that the admitted statements were made when declarants were influenced by other impeaching motives. No doubt the witnesses were motivated to cooperate with investigating authorities at the time they made the statements in question. However, we decline to speculate whether the informing propensities of the witnesses also embraced motives or inclinations to fabricate. The testimony of the witnesses in chief was insinuated to be the product of a considerably greater motive to fabricate than characterized the extrajudicial utterances. Under such circumstances, the alleged presence of other, less cogent motives to fabricate, concurrent with the making of the extrajudicial statements does not preclude the admissibility of the out-of-court statements under the exception announced in Van Gallon, supra.
In addition to the requirement that the extrajudicial statements antedate the impeaching motive to fabricate, the exception announced in Van Gallon, supra, requires the prior statements to be consistent with the witness' testimony in chief. This requirement of consistency helps to insure *745 that additional evidence going beyond the witness' direct testimony will not be introduced under the guise of corroboration. See State v. Brooks, 260 N.C. 186, 132 S.E.2d 354, 356 (1963). Accordingly, a failure to properly adhere to the requirement of consistency tends to border on a disregard of the dangers sought to be restrained by the hearsay rule. This risk, of course, may be minimized by cautionary instructions to the jury. Even then, however, if the extrajudicial statements contain references to facts that are new or extrinsic to the testimony in chief, the jury may well be influenced to consider only the substance of such facts, since by virtue of their extrinsic nature they would be devoid of corroborative propensities. Therefore, while the belief is generally asserted that the introduction of prior consistent statements for the purpose of corroborating a witness is an exception to, or not a violation of the hearsay rule, this conclusion is justified only when the limiting principles in the exception are properly adhered to and applied.
In the present case, we find that the extrajudicial statements of both Mae Turner and Mary Kane exceeded the limitation of consistency and presented evidence going beyond their testimony in chief. The extrajudicial statement of Mae Turner as testified to by F.B.I. Agent Lally referred to the fact that Greene had told Mrs. Turner that "he had just killed two people." We have carefully and extensively examined the record of Mae Turner's direct testimony and are unable to discover evidence to the effect that Greene conclusively told her that he had just perpetrated a homicide, even though Mrs. Turner was asked to narrate the conversation between Greene and herself that transpired when the appellant came to her house on the morning of August 23, 1965. Nor does it appear that, in his direct examination of Mrs. Turner, the State Attorney ever asked the witness specifically if Greene had told her that he had just killed anyone. We decline to speculate as to why the State did not attempt to expressly evoke from Mrs. Turner whether appellant Greene had told her in straightforward terms that he had just perpetrated a homicide. We simply hold that it is not permissible under the claim of corroboration to allow into evidence an extrajudicial statement of a witness referring to a straightforward admission of guilt by an accused when no such straightforward admission was presented in the direct testimony of the witness. A similar error characterizes the introduction into evidence of Mary Kane's extrajudicial statements. The reference in this witness' prior statements to the fact that Greene had told Mrs. Turner that he killed two people was completely extrinsic to Mary Kane's testimony in chief.
Under the circumstances described above, the introduction of additional evidence in the form of extrajudicial statements incurs the danger that the jury will be inclined to consider the probative weight of such additional extrajudicial evidence solely for the purpose of establishing the substance of facts asserted therein, rather than bearing on the issue of corroboration. When, as in the present case, the extrajudicial statements contain references to additional and extrinsic facts whose potential probative force is highly incriminating or critical to the establishment of an ultimate fact in dispute, we believe that the admission into evidence of such extrinsic portions of the extrajudicial statements constitutes reversible error.
The error we find in the present case could have been avoided if the two witnesses (Mae Turner and Mary Kane) had in fact testified in chief that Richard Greene had told them that he perpetrated the killings. A sufficient predicate would have then been established for admitting portions of the witnesses' prior statements which were consistent with and corroborative of such assertions. Error, of course, could have been avoided by not resorting to the introduction of the excessive portions of the witnesses' prior statements.
*746 In the present case, the record reveals that appellants objected en masse to the extrajudicial statements sought to be introduced and failed to move to strike any specific portions of the admitted testimony. Ordinarily this procedure will not preserve for review the erroneous admission of only specific portions of the total testimony. See generally, Ortiz v. State, 30 Fla. 256, 11 So. 611 (1892); Dansen v. State, 62 Fla. 29, 56 So. 677 (1911); Davis v. State, 95 Fla. 259, 116 So. 226 (1928). However, because appellants stand convicted of first degree murder and because the evidentiary problems presented by the testimony in question have not been extensively elaborated and explored by court decisions in this state, we are of the view that the appellants should not be precluded from a review of the errors announced above. We suggest as a caveat, however, that the propriety of specific objections to rehabilitative testimony in cases similar to the instant situation can best be resolved upon a proffer of the extrajudicial statements out of the presence of the jury.
Subsequent to the oral argument before us in this case, the case of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, was decided on May 20, 1968. Since the applicability of that case could not, of course, be argued here and we reverse the instant case on principles of law not involved in Bruton, we do not undertake to apply Bruton here but direct attention of its possible application to a retrial of this case.
For the reasons stated the judgments should be reversed and remanded for a new trial so we have agreed to the Per Curiam order doing so.
DREW and THORNAL, JJ., concur.
NOTES
[1] Although the holding of Miranda is not retroactively applicable to the present case, [see Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966)] it is evident that the reasoning of that decision affords the most expansive and liberal treatment to the contention asserted by Appellant Greene.