James L. BYRD, Petitioner-Appellee,

v.

Louie L. WAINWRIGHT, Director, Florida Division of Corrections, Respondent-Appellant.

No. 28245.

United States Court of Appeals, Fifth Circuit.

June 24, 1970.

---

10. *See* House v. United States, 134 U.S.App.D.C. 10, 411 F.2d 725, 728 (1969).

———•———

Earl Faircloth, Atty. Gen. of Florida, Tallahassee, Fla. Jesse J. McCrary, Jr., Asst. Atty. Gen., Miami, Fla., for respondent-appellant.

Gerald F. Richman, Miami Fla., for petitioner-appellee.

Before GODBOLD, DYER and MORGAN, Circuit Judges.

GODBOLD, Circuit Judge:

This is an appeal from an order of the District Court granting Byrd's petition for a writ of habeas corpus. We affirm.

On April 6, 1966 Byrd was indicted in Florida state court for rape, along with six other defendants. In May he moved for a severance, stating that his defense would vary from that of the codefendants, that he would require the testimony of certain of the codefendants and could not at any stage of the trial expect or compel any of them to be witnesses in his behalf, and that he could not resolve his dilemma unless the codefendants were tried separately from and earlier than he.

The motion was denied by an order entered immediately before trial in September. Byrd was convicted, along with three of the other defendants, and was given a life sentence. Two defendants pleaded guilty during the trial. One defendant was acquitted on a directed verdict. He exhausted his state remedies. Following an evidentiary hearing the federal District Court granted habeas on the ground that the denial of a severance was a violation of due process, relying upon United States v. Echeles, 352 F.2d 892 (7th Cir. 1965) and DeLuna v. United States, 308 F.2d 140 (5th Cir. 1962).

 We examine the matters known to the trial judge at the time he ruled on the motion to sever, recognizing that a motion for a separate trial is ad-dressed to the discretion of the court, reviewable for abuse of discretion, Sosa v. State, 215 So.2d 736 (Fla. 1968), Smith v. United States, 385 F.2d 34 (5th Cir. 1967), and bearing in mind that in cases of this nature safeguarding the rights of defendants and the interests of the courts in efficient and expeditious administration of criminal justice is necessarily approached on a case by case basis. *Echeles, supra,* 352 F.2d at 897.

All seven defendants were charged with the mass rape of the same young woman on a single occasion. The other six defendants confessed, some only to presence at the scene, others to actual participation in the rape. Five confessions purported to name all persons present at the commission of the crime; only one of these five named Byrd. Another of the five affirmatively stated that Byrd was not present. The sixth confession implicated Byrd as an active participant in the crime.

Motions were filed to suppress the confessions for failure to give *Miranda* warnings, and on July 26 the court held a hearing on those and other pending motions. The confessions were before the court, and arguments were made concerning them by several of the counsel for various of the defendants. Byrd's counsel was present and argued his pending motion for severance. He pointed out that Byrd was the only non-confessing defendant, and that his major defense would be alibi. He noted the possibility that the other defendants might not take the stand, and that he could not require them to testify or even call them to the stand as witnesses. *E. g.,* DeLuna v. United States, *supra.*

As to the one confession which incriminated Byrd (that of Parks), Byrd's counsel told the court that he had talked to Parks who had told him there had been confusion in the taking of his confession (arising from the fact that police were also investigating a different incident, near in time, at which some of the defendants had been present) and, in substance, that Byrd had not been present at the rape scene. Byrd's coun-

sel told the court that he had heard conversations among the other defendants to the effect Byrd was not present at the rape, and that the other defendants had told him their testimony would be that Byrd was not with them on the date of the crime.

The court set the motion to sever for further hearing. Subsequently he suppressed the six confessions. Although the order of suppression is not in the record, colloquy with counsel, which is in the record, indicates that it was based on lack of full compliance with *Miranda.*

On September 7 the court held the further hearing on the motions of Byrd (and others) for severance. Counsel for Byrd, and the prosecutor, pointed out the likelihood that some of the codefendants might plead guilty. Counsel for defendant Chisholm (who pleaded guilty at trial) reported he was considering the possibility of a guilty plea. All the motions to sever were denied.

In the interest of full understanding we note events which took place at the trial. In so doing, we recognize that we are considering the judge's exercise of discretion at the pre-trial stage when he denied the motion, and that he is not to be found in error for that denial on the basis of matters that became known to him later or events occurring at the trial.[1] On conclusion of the state's case, a verdict of acquittal was directed as to defendant Marshall. Byrd was the only defendant who took the stand. He denied being present at the scene. After his testimony all defendants rested. Two more defendants, Davis and Chisholm, then changed their pleas to guilty. The four remaining defendants, including Byrd, were found guilty.

This case is similar to *Echeles, supra,* relied on by the court below. There, in the course of a criminal trial, defendant Arrington admitted on the stand that he had engaged in a scheme to present falsified documents and perjured testimony in his defense. In his testimony, and in subsequent statements in open court, he exculpated Echeles, his attorney, of participation. Arrington was indicted for perjury, and Arrington and Echeles (and others) for procuring the perjury, conspiracy, and like offenses.

Echeles faced a prospect, which Byrd did not face, of a trial in which Arrington's incriminating admissions could be introduced into evidence against Arrington and would in some degree prejudice Echeles. But his second problem was the same as Byrd's, inability to get into evidence statements tending to exculpate him made by his codefendant. The 7th Circuit held that the trial court erred in denying a severance, saying:

> At this juncture, we hold merely that, having knowledge of Arrington's record testimony protesting Echeles' innocence, and considering the obvious importance of such testimony to Echeles, it was error to deny the motion for a separate trial. It should have been clear at the outset that a fair trial for Echeles necessitated providing him the *opportunity* of getting the Arrington evidence before the jury, regardless of how we might regard the credibility of that witness or the weight of his testimony. (Emphasis in original.)

352 F.2d at 898.

When a trial court is presented with a motion to sever based on the desire to offer exculpatory testimony of a codefendant, there are several areas of inquiry, sometimes overlapping, which the court well may pursue for guidance in determining what it should do:

(1) Does the movant intend or desire to have the codefendant testify? How must his intent be made known to the court, and to what extent must the court be satisfied that it is bona fide?

---

1. This is not to say that there may not be error for denial of a motion made or renewed at trial, or, in a sufficiently extreme case of prejudice, for failure of the trial judge on his own motion to reopen the question of severance where, after denial, the circumstances have sufficiently changed. In this instance, the motion was not reviewed at trial.

(2) Will the projected testimony of the codefendant be exculpatory in nature, and how significant must the effect be? How does the defendant show the nature of the projected testimony and its significance?[2] Must he in some way validate the proposed testimony so as to give it some stamp of verity.

(3) To what extent, and in what manner, must it be shown that if severance is granted there is likelihood that the codefendant will testify?

(4) What are the demands of effective judicial administration and economy of judicial effort? Related to this is the matter of timeliness in raising the question of severance?[3]

(5) If a joint trial is held, how great is the probability that a codefendant will plead guilty at or immediately before trial and thereby prejudice the defendant, either by cross-defendant prejudice or by surprise as it relates to trial preparation?

■ There is no duty to sever merely because potentially exculpatory testimony of a codefendant exists. The defendant-movant must desire to use it. Brown v. United States, 126 U.S.App.D. C. 134, 375 F.2d 310, 317, cert. denied, 388 U.S. 915, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967). The desire of Byrd was plain and was asserted earnestly and repetitiously by his counsel, with full exploration of reasons. We reject the underlying implication of the state that as a matter of law there must be either formal testimony of defense counsel under oath, or an affidavit from him, stating his intent to use the codefendant's

testimony. In this instance the transcripts of the July and September hearings reveal not merely argument but extensive dialogue and exchange between attorneys and the court on many aspects of the case, in an atmosphere of apparent candor and trust. It is clear that the court treated as trustworthy the statements of the numerous counsel, as officers of the court.[4]

We turn to the second area of inquiry, the exculpatory nature, and the significance, of the codefendant's testimony and the showing of those factors. This might be restated in terms of the extent of potential prejudice to the defendant if the defendant is tried without the opportunity to elicit the codefendant's testimony.[5]

■ It must be shown that the testimony would be exculpatory in effect. Smith v. United States, *supra*, 385 F.2d at 38. The movant must make a clear showing of what the codefendant would testify to. United States v. Kaufman, 291 F.Supp. 451 (S.D.N.Y. 1968). Such a showing was made in this case. The confessions were before the court at the July hearing and their contents discussed. Again, we reject overly-formalistic rules. It is not necessary, as the state implies, that the potential testimony of the codefendant bear the imprimatur of having been given previously in a judicial proceeding under oath. In United States v. Gleason, 259 F.Supp. 282 (S.D.N.Y. 1966), severance was granted where "there was no dispute between the government and the moving defendant that a codefendant had in the

---

2. On the matter of effectual procedures for getting before the judge, at the pre-trial stage, the nature of the codefendant's testimony, in the federal system Rule 14 provides that the court may require the government to deliver for *in camera* inspection any statements or confessions which the government intends to introduce in evidence.

3. In Kolod v. United States, 371 F.2d 983 (10th Cir. 1967), the motion was made at mid-trial, and the principal ground for denial was failure to timely present be-

fore trial. Compare United States v. Leighton, 265 F.Supp. 27 (S.D.N.Y.1967) describing some of the frustrations of dealing with the motion before trial.

4. United States v. Gleason, 259 F.Supp. 282 (S.D.N.Y.1966) is an example of handling the motion, and the showings of underlying factors, by affidavits from both sides.

5. In the federal system, Rule 14 Fed.R. Crim.P. is expressly in terms of prejudice to the defendant.

past made written and oral exculpatory statements concerning the movant." 259 F.Supp. at 283.

In *Echeles* the court considered Arrington's testimony to be of "obvious importance." So it is in the instant case. Perhaps the most critical fact known to the trial judge when acting on Byrd's motion was the inconsistencies of the confessions, which raised strong doubts as to Byrd's guilt. One defendant exculpated him. One (Parks) named him as a participant, but counsel represented that Parks would testify that Byrd was shown as present through error. Four defendants named various persons as being present, but none included Byrd. The state urges that "no one has a constitutional right to be tried last." That is not the problem. Here the one person who had a unique interest in being tried separately and later was Byrd. Also, this was a shocking crime of violence, committed in the nighttime, with at the most two eye witnesses to attempt to identify seven Negro youths. (As it turned out, identification was by one witness, the victim's date—the young woman could identify no one.)

We do not consider the last sentence of the above-quoted language from *Echeles* to establish a principle that the judge presented with a motion to sever may not make inquiry into credibility or weight of the potential testimony of the codefendant but to only refer to the testimony of Arrington under the circumstances of that case. Credibility is for the jury, but the judge is not required to sever on patent fabrications. If the testimony is purely cumulative, or of negligible weight or probative value, the court is not required to sever. The requirement is not a trial which guarantees the defendant every item of evidence he would like to offer but one which meets constitutional standards of due process.

■■ In addition to making the other defendants unavailable, the joint trial affected Byrd adversely in another respect. So long as he was tried with oth-

ers he had no way to introduce the confessions they had given, since they were taken in violation of *Miranda* and were inadmissible against them. *Cf.* Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). But at a separate trial he would have at least a possibility of getting the confessions themselves into evidence and enjoying their exculpatory effect even though the codefendants claimed the privilege against self-incrimination. The confessions, since not being used to incriminate anyone on trial, would not violate *Miranda*. The record before us does not show that the statements were made involuntarily although preceded by an incomplete *Miranda* warning. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). A declaration against penal interest by the accused is admissible in Florida if made voluntarily. Williams v. State, 74 So.2d 797 (Fla. 1954). As to the possible admissibility, as an exception to the hearsay rule, of a statement against penal interest by one not a party, containing matter exculpatory of the accused, when the testimony of the declarant is unavailable, see V Wigmore on Evidence, §§ 1456–77 pp. 259–290. The parties have not briefed the Florida law on this point, and it is not necessary that we develop the matter further than to refer to a possibility of admissibility.

■ A third inquiry may be into the likelihood that the codefendant will be willing to testify if the defendant is tried separately. *Echeles* said this:

With regard to the question of whether or not Arrington would claim the privilege if he were called as a witness during a trial of Echeles alone —a trial held subsequent to his own —we can only say that such question was not properly the Government's to interpose. Speculation about what Arrington might do at a later Echeles trial undoubtedly would be a matter of some concern to Echeles, but he should not be foreclosed of the possibility that Arrington would testify in his behalf merely because that eventuality

was not a certainty. [Citations omitted.] Moreover, it would in fact seem more likely than not that Arrington would have testified for Echeles for the reason that three times previously, in open court, Arrington had voluntarily exculpated Echeles, apparently contrary to his own penal interest. 352 F.2d at 898. We do not agree that likelihood is an inquiry that the government may not even make. The court is not required to sever where the possibility of the codefendant's testifying is merely colorable or there is no showing that it is anything more than a gleam of possibility in the defendant's eye. "The unsupported possibility that such testimony [exculpatory testimony of a codefendant] might be forthcoming does not make the denial of a motion for severance erroneous." United States v. Kahn, 381 F.2d 824, 841 (7th Cir. 1967). *Accord,* Tillman v. United States, 406 F.2d 930, 936 (5th Cir. 1969)[6] In this circuit we have referred to the codefendant's being "more likely to testify were he [the movant] tried separately." Smith v. United States, *supra,* 385 F.2d at 38. In United States v. Gleason, 259 F.Supp. 282, 284 (S.D.N.Y. 1966) the court reached this conclusion:

> It is enough to say that Karp [the movant] has shown persuasive ground for the claim that she needs Pitkin's [the codefendant's] evidence; that the need must almost certainly go unsatisfied in a joint trial; and that there is substantially greater likelihood of her using him if they are tried separately.

 Byrd asked not only a separate but a later trial, and, as pointed out previously, he was the one defendant with a unique interest in being tried later than the others. This is not a case like Gorin v. United States, 313 F.2d 641 (1st Cir. 1963) in which the court may indulge in an assumption that a codefendant would be no more willing to waive his privilege against self-incrimination when called as a witness in a separate trial than he would be willing to insist upon his privilege as a defendant not to take the stand. The sequence in which trials would be held is in the discretion of the court.[7] Other defense counsel, and the prosecutor, had made known the strong likelihood that at least some of the codefendants would plead guilty.[8]

Bearing on the likelihood issue is the question whether codefendants pleading guilty would lose their right to claim the privilege against self-incrimination at a later trial of the defendant. See Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963); Coile v. United States, 100 F.2d 806 (5th Cir. 1939); Annot. 9 A.L.R.3d 990 (1966). In this instance the question is complicated by the other incident, known to the judge, at which some of the defendants appeared to have been present, and for which some of them had been charged, and the possibility that one testifying about the rape might tend to incriminate himself as to the other incident. These are questions we need not answer. The inquiry is not as to certainty whether the codefendants will or will not testify but the likelihood.

Our disposition of the case makes it unnecessary for us to consider whether the court, in its continuing duty at all stages of the trial to grant a severance

---

6. See also United States v. Kahn, 366 F.2d 259, 264 (2d Cir. 1966) :
 "This possibility [of exculpatory testimony by the codefendant at a separate trial], standing by itself, did not make the denial of a motion for severance erroneous, (citations omitted), at least in the absence of anything in the record indicating that the codefendant would have given exculpatory evidence."

7. See United States v. Sanders, 266 F. Supp. 615 (W.D.La.1967), in which the court granted severances to two defendants and established an order of trial consisting of four separate trials, expressly reserving the right to change the sequence and to reconsolidate if appropriate.

8. In a case, such as the present one, where the exculpatory testimony is in such form that it may be independently admissible as an exception to the hearsay rule, inquiry into likelihood that the codefendant will testify may become academic.

if prejudice appears, Schaffer v. United States, 362 U.S. 511, 80 S.Ct. 945 4 L. Ed.2d 921 (1960), was required to declare a mistrial when a directed verdict was entered as to Marshall, or later, when guilty pleas were entered by Davis and Chisholm.

Affirmed.