**UNITED STATES of America**

**v.**

**Joseph D. BEASLEY et al.**

**Crim. No. 74–149.**

United States District Court,
E. D. Louisiana.

Feb. 24, 1975.

James Carriere, First Asst. U.S. Atty., Don M. Richard, Asst. U.S. Atty., for U.S.

Jim Garrison, New Orleans, La., for Joseph D. Beasley.

John Volz, Public Defender, New Orleans, La., for Oscar E. Kramer.

ALVIN B. RUBIN, District Judge:

Defendant Kramer has moved to suppress at his second trial the testimony he gave at his first trial, which ended in a mistrial as to him after he testified.[1] Mr. Kramer recognizes the general rule that testimony given by a defendant at one trial is admissible against him in a later trial, even though he chooses then not to testify in his own behalf. Harrison v. United States, 1968, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047; Ayres v. United States, 5 Cir. 1952, 193 F.2d 739. He argues, however, that the unique circumstances of this case require that his testimony be suppressed.

During the week before the first joint trial of this matter was to begin, Dr. Beasley moved for a severance. He attached to his motion defendant Kramer's affidavit, in which Mr. Kramer stated that he would testify in a manner exculpatory to Dr. Beasley if his own case were tried separately from Dr. Beasley's, but that he feared to testify if they were tried together lest he jeopardize his own defense. Because Dr. Beasley was entitled to Kramer's testimony under the law of the Fifth Circuit, the court assured Mr. Kramer that if he testified as his affidavit indicated, the court would grant a severance at the conclusion of his testimony. United States v. Martinez, 5 Cir. 1973, 486 F.2d 15; Byrd v. Wainwright, 5 Cir. 1970, 428 F.2d 1017.

Defendant Kramer in fact testified in a manner that tended to exculpate Dr. Beasley and incriminate himself. At a brief recess during his testimony, the court granted his motion for a severance. Mr. Kramer now argues that the transcript of this testimony should be suppressed, because (1) whatever waiver of his Fifth Amendment rights he made in so testifying is invalid, and (2) he did not testify on his own behalf, but rather on behalf of Dr. Beasley.

■ Kramer's decision to testify at the first trial certainly bears all the indicia of a valid waiver of Fifth Amendment rights, made intelligently and with knowledge of its consequences. Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. Mr. Kramer is himself a lawyer. Although he chose to represent himself, the court appointed the Public Defender to advise him. Mr. Kramer thus had the benefit of a knowledgeable and experienced attorney's advice before he decided to testify. He also knew of the court's specific refusal to rule in advance on whether any testimony he gave at the first trial would be admissible at a later trial. His very request for a severance demonstrates that he appreciated the potentially incriminating nature of his proposed testimony. Mr. Kramer may have acted against his counsel's advice; he may have acted for motives other than those of self-interest. But these factors do not make his waiver any less knowing and intelligent. Cf. Harrison v. United States, 1968, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047.

■ Defendant Kramer argues that to refuse to suppress his testimony in Dr. Beasley's behalf would accomplish what *Martinez* requires a severance in order to prevent; he argues that the reason for severing one defendant's trial from that of the other defendant is to permit the defendant severed to testify without fear of self-incrimination. It is true that for this reason, the trial of the testifying defendant is usually held first, so that his guilt or innocence will not be affected by his testimony at his co-defendant's trial. See *Byrd, supra,*

---

[1] Later there was a mistrial as to his co-defendant, Dr. Joseph Beasley because the jury was unable to reach a unanimous verdict.

428 F.2d at 1020–21. But the procedure outlined in *Martinez* and *Byrd* protects only the right of the non-testifying defendant to the benefit of his co-defendant's testimony; those cases do not deal directly with any right of the testifying defendant. As long as severance gives the remaining defendant a better chance to adduce his co-defendant's testimony, it has served its purpose. Here, severance (or the assurance that one would be granted) produced the testimony Dr. Beasley sought, for whatever reason Mr. Kramer gave it. Severing their trials has already accomplished the ultimate purpose *Martinez* contemplates.

There are other aspects of the Fifth Amendment right to avoid compulsory self-incrimination pertinent here: it permits a witness to claim its protection while testifying, and it also protects a defendant from even being called to testify in his own trial and from being forced to invoke his constitutional privilege in the jury's presence. A severance thus permits the remaining defendant to call his co-defendant to the stand, no matter what disposition is made of the transcript of his testimony when so called. The witness may then refuse to testify; but the defendant has been able to call him and to put before the jury the witness' belief that his own testimony will incriminate himself. In at least one case on which the Fifth Circuit relied in *Martinez*, the court saw this result—permitting a defendant to call an exculpatory witness who otherwise could not be compelled to testify—as a chief benefit of severance, without regard to the content of his testimony when called. United States v. Shuford, 4 Cir. 1971, 454 F.2d 772, at 776–78. Failure to suppress one defendant's testimony, then, does not completely undercut the purpose of a *Martinez* severance.

■ Defendant Kramer also argues that, because this testimony was not given on his own behalf, it should not be admissible against him. He suggests that the cases both he and the government cite all involve earlier testimony given by a defendant on his own behalf, and that this common fact establishes a rule that *only* such testimony is admissible in a later trial. As a matter of logic, this attempt to take Mr. Kramer's testimony out of the general rule of admissibility seems to rest on a distinction without a difference. Testimony given on behalf of another might well be even more reliable than testimony given in one's own behalf, and, to the extent that truth is the goal of the trial process, it should be all the more readily admitted. But we need not rest on logic alone, for in Ayres v. United States, 5 Cir. 1952, 193 F.2d 739, which the defendant cites as stating the general rule, the court upheld the introduction at the defendant's trial of testimony he gave at another individual's habeas corpus hearing. The cases themselves foreclose the distinction on which the defendant Kramer seeks to rely.

■ Finally, Mr. Kramer argues that the first trial, which ended eventually in a mistrial as to both defendants, is a "nullity", and that therefore no testimony adduced during it is admissible in a later proceeding. This argument rests only on *ipse dixit* and a citation to an inapposite case, Kerchevel v. United States, 1926, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009. Whether or not the trial had any effect on the legal rights or status of the parties, it happened; we cannot pretend that it did not. Whatever absurdities the law may require in other contexts, it does not require this court to indulge this suggestion.

Nor does the Fifth Amendment require the court to assist in what might occur to the mind of ingenious co-defendants. If Kramer's position is correct each might testify to exculpate the other in their successive trials without incriminating himself. The logic of Kramer's position would mean that Dr. Beasley might now testify at Kramer's trial while Kramer's testimony at Dr. Beasley's is suppressed. Presumably then Dr. Beasley could later choose to move to suppress his Kramer trial testi-

mony. The Constitution does not require the court to construct a rule of law open to this obvious abuse.

For these reasons, the motion to suppress is denied.