**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**I. VASILIOS, a/k/a Bill Vasilios, and Howard W. Alexander, Defendants-Appellants.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James W. BREWER,**
**Defendant-Appellant.**

**Nos. 77–5743, 78–5148.**

United States Court of Appeals,
Fifth Circuit.

July 5, 1979.

Rehearing Denied Aug. 30, 1979.

Donald I. Bierman, Lawrence E. Besser, Miami, Fla., for Vasilios.

Morton M. Berger, Spring Valley, New York, for Alexander.

Denis Dean, Sr., (Court-appointed), Miami, Fla., for Brewer.

Christian F. Vissers, Appellate Sec., Criminal Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before WISDOM, GOLDBERG and VANCE, Circuit Judges. ·

VANCE, Circuit Judge:

The convictions appealed in this case arise out of a complex scheme to defraud investors purchasing industrial revenue bonds. Howard Alexander, James Brewer and I. Vasilios, participants in the plan, were found guilty of mail fraud, securities fraud and conspiracy to commit those offenses. 18 U.S.C. § 1341; 15 U.S.C. §§ 77q(a), 77x; 18 U.S.C. § 371. Appellants Alexander and Vasilios were tried jointly; Brewer was tried alone. Their cases, however, have been consolidated for this appeal.

The principal issues presented to this court are peculiar to the appellant urging them: whether the trial court unduly restricted Alexander's cross-examination of a prosecution witness; whether Vasilios' motion for severance should have been granted; whether the trial court erred in failing to give a cautionary instruction to the jury before a coconspirator's hearsay statements were admitted against Brewer; and whether the evidence was sufficient to support Vasilios' conviction.[1] After considering the arguments advanced by the parties, we conclude that the convictions should be affirmed.

*Cross-Examination*

Alexander complains that the trial judge unduly restricted his cross-examination of R. J. Allen[2] by refusing to allow him to ask whether the witness knew that Alexander had planned to testify against him in a Texas criminal action. Alexander contends that this refusal denied him the opportunity to establish Allen's bias and

that the denial was constitutional error since it prevented him from exercising his sixth amendment right to confront his accuser by effectively cross-examining him.[3]

Although the trial judge is granted discretion to restrict the scope and extent of cross-examination, *e. g., Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976),

> this discretionary authority . . . comes into play only after there has been permitted as a matter of right sufficient cross-examination to satisfy the Sixth Amendment.

*United States v. Bass,* 490 F.2d 846, 858 n. 12 (5th Cir. 1974), *quoted in United States v. Elliott,* 571 F.2d 880 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). Impeachment of a witness comports with constitutional standards when defense counsel is allowed to

> expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.

*Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974).

The record in the case is replete with references discrediting Allen and his testimony. Jurors were aware that he was testifying pursuant to a plea bargaining agreement; that he was a convicted felon; that he had a drinking problem; and that his business association with Alexander had been marred by frequent conflicts over management of their jointly-owned underwriting firm. When defense counsel tried to show bias through Alexander's intention

---

1. Also raised as errors are insufficient evidence supporting Alexander's conviction; admission of a coconspirator's hearsay statement against Vasilios when the conspiracy was insufficiently proved; and fatal variance between the indictment and proof adduced at the trial of Vasilios and Alexander. We have reviewed these contentions, but find them to be without merit.

2. Allen was indicted on conspiracy, mail fraud and securities fraud charges along with Alexander. He pleaded guilty prior to trial.

3. The right of an accused to effectively cross-examine an adverse witness is embodied in the confrontation clause of the sixth amendment. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *United States v. Brown,* 546 F.2d 166 (5th Cir. 1977).

to testify against Allen,[4] the trial judge disallowed the line of questioning because Alexander's decision to testify was based on a plea bargaining agreement under which he pleaded nolo contendere. The government argued for exclusion, claiming that it could not bring out Alexander's nolo plea in rebuttal. The lower court erroneously adopted this position. Contrary to the government's contention all evidentiary uses of a prior nolo plea are not prohibited. The government's brief on appeal cites *United States v. Morrow*, 537 F.2d 120 (5th Cir. 1976), *cert. denied*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977), as support, but *Morrow* is inapposite, since it held only that a plea of nolo contendere may not be used

> for the purposes of impeachment or to show knowledge or intent in a proceeding different from that where the plea was offered.

*Id.* at 142 (footnote omitted). In Alexander's case, the nolo plea would have been used to expose all of the factors surrounding the creation of Allen's alleged bias by revealing Alexander's motive for testifying in the Texas trial. It would not have been used to impeach the defendant, Alexander,

or to show his intent to commit similar crimes. *Cf. Kilgore v. United States*, 467 F.2d 22 (5th Cir. 1972) (plaintiff's prior nolo plea in criminal tax fraud case could be used in cross-examining his character witness in subsequent suit for tax refund).

Even though the court erred in holding the evidence inadmissible, we find that the defendant was not prejudiced by this error. Allen was subjected to rigorous and effective cross-examination resulting in over one hundred fifty pages of transcript. The jury was sufficiently apprised of other bases on which Allen's credibility was vulnerable to attack. *See United States v. Teller*, 412 F.2d 374 (7th Cir. 1969), *cert. denied*, 402 U.S. 949, 91 S.Ct. 1603, 29 L.Ed.2d 118 (1971). The issue of possible bias was also brought before the jury through Allen's testimony concerning past business dealings with Alexander.[5]

■ We conclude that the restrictions on cross-examination imposed in the lower court did not rise to the level of interference with Alexander's sixth amendment rights and that the error in limiting the cross-examination was not so prejudicial as

---

4. Alexander had no opportunity to testify against Allen because Allen pleaded guilty in the Texas criminal action. This fact strengthens our conclusion that Alexander was not prejudiced by the court's ruling. The degree of bias resulting from an unrealized intention to testify adversely in a previous action, if any, is slight indeed.

5. The jury could infer bias from Allen's testimony elicited on direct examination:

> [ALLEN] Well at this point there was friction going on between the two of us.
> [FARRAR] And what was the friction over?
> [ALLEN] Just the concept in running a business.
> There was an awful lot of expense and we were going one direction and going down, and there was no way to pull ourselves up or out of it, unless something was done.
> He was not going to buy me out and I thought the best thing would be to have him bought out.

On cross-examination, Allen testified,

> [BERGER] In the fall of 1973, things were getting pretty heated between you and Mr. Alexander, is that not correct?
> [ALLEN] We saw better days.

It became more heated—around July—it was not as bad towards that time.

> [BERGER] Things were not getting heated between you and Mr. Alexander in October or November of 1973?
> [ALLEN] The word "heated"—I'm having difficulty trying to understand what you mean by "heated."

. . . . .

> [BERGER] Do you recall testifying in January of 1977, under oath—page 195—that somewhere in the time around October or November—"And I think between Bill Alexander and I things were getting a little heated"—what did you mean by "getting a little heated"?
> [COURT] Would you read the question and answer, please?
> [BERGER] "Q. When did that first come to your attention?
> "A. Some time around October or November things between Bill Alexander and I were getting a little heated."

. . . . .

> [ALLEN] I don't think Bill Alexander and I ever had a mean word towards each other or heated; it was just a feeling that was in the air. That's what I mean by it.

to result in an abuse of discretion. *See Gordon v. United States,* 438 F.2d 858 (5th Cir.), *cert. denied,* 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 56 (1971).

### Motion for Severance and Subsequent Trial

Four days before trial, Vasilios moved for a trial separate from and subsequent to that of his codefendant, Brewer, in order to introduce his exculpatory testimony. Because Brewer's appointed counsel withdrew from the case on the eve of trial, the lower court severed Brewer's trial from that of Vasilios and Alexander. Vasilios' request for a subsequent trial, however, was denied.

Vasilios concedes that the decision to grant a motion for severance or for a subsequent trial is vested in the sound discretion of the trial court, *United States v. Martinez,* 486 F.2d 15 (5th Cir. 1973) (severance); *Byrd v. Wainwright,* 428 F.2d 1017 (5th Cir. 1970) (trial sequence), but argues that the court's failure to grant his motion in this case occasioned such prejudice that his trial was rendered fundamentally unfair. *See Byrd v. Wainwright.*

Brewer submitted affidavits to the district court stating that he would be willing to testify at Vasilios' trial if it were held after his trial. The proffered testimony indicated that Vasilios exercised no independent authority in his job with Allen's underwriting firm and that his job responsibilities in the firm were directed toward cutting expenses and delivering purchased bonds. This testimony would have proved, Vasilios maintains, that he could not have been involved in the fraudulent practices charged in the indictment.

Although a severance was ultimately granted in this case, the guidelines announced by this circuit to be considered in determining when a refusal to grant a severance motion constitutes a denial of fair trial may be of aid in deciding whether the court's refusal to order Vasilios' trial subsequent to Brewer's resulted in a denial of due process:

(1) Does the movant intend or desire to have the codefendant testify? How must his intent be made known to the court, and to what extent must the court be satisfied that it is bona fide?

(2) Will the projected testimony of the codefendant be exculpatory in nature, and how significant must the effect be? How does the defendant show the nature of the projected testimony and its significance? Must he in some way validate the proposed testimony so as to give it some stamp of verity[?]

(3) To what extent, and in what manner, must it be shown that if severance is granted there is likelihood that the codefendant will testify?

(4) What are the demands of effective judicial administration and economy of judicial effort? Related to this is the matter of timeliness in raising the question of severance.

(5) If a joint trial is held, how great is the probability that a codefendant will plead guilty at or immediately before trial and thereby prejudice the defendant, either by cross-defendant prejudice or by surprise as it relates to trial preparation?

*Byrd v. Wainwright,* 428 F.2d at 1019–20 (footnotes omitted).

■ Here, however, all of the *Byrd* criteria were not met. Specifically, the "demands of effective judicial administration and economy of judicial effort" compel the affirmance of the lower court's action. When faced with the decision to postpone Vasilios' and Alexander's trial until after Brewer's, the court had the choice of either delaying Alexander's day in court or severing Alexander's and Vasilios' joint trial, which would have resulted in three separate trials on the same factual testimony. These alternatives are not outweighed by Vasilios' need for Brewer's testimony. Indeed, most of the same facts had been brought out earlier by the government. Further, there was ample evidence available to bring Vasilios into the sphere of illegal activities charged in the indictment. The trial court did not abuse its discretion in failing to order a later trial.

### Judgment of Acquittal

Vasilios also argues that the lower court erred in failing to grant his motion for judgment of acquittal. He contends that the evidence is insufficient to support the jury's finding that he had guilty knowledge of the fraudulent activities charged in the indictment and that he had a specific intent to defraud.

 On appeal, our standard of review is substantially the same as the standard used in determining whether the evidence is sufficient to support a guilty verdict, taking the view most favorable to the government. *United States v. Fontenot,* 483 F.2d 315, 319 (5th Cir. 1973). The record reveals that, upon the dissolution of Allen and Alexander's partnership, Vasilios assumed Alexander's administrative responsibilities at the underwriting firm and covered for Allen during his frequent drinking binges. He exercised control over the firm's funds. Vasilios provided false and misleading information to the accountant preparing a financial statement for a shell company for whom the underwriting firm was handling a bond issue. These circumstances reveal that Vasilios was accorded a position of power and influence over the activities of the underwriting firm, which, he concedes, was involved in the fraudulent sale of bonds. It may easily be inferred that he was a part of the conspiracy to defraud purchasers of the industrial revenue bonds. *See United States v. Netterville,* 553 F.2d 903 (5th Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135 (1977). The false representations made to the accountant indicate that he possessed specific intent to defraud. The lower court did not err in refusing to grant a judgment of acquittal as to Vasilios.

### Coconspirator Instructions

Brewer's sole contention is that the court erred in failing to give an *Apollo*-type instruction to the jury when extra-judicial statements of his alleged coconspirators were introduced into evidence at his trial. *See United States v. Apollo,* 476 F.2d 156 (5th Cir. 1973). We do not agree.

 The instruction given was in substantial compliance with *Apollo.* Even if it were not, however, the standards and procedures established in *Apollo* were recently abolished by this court in *United States v. James,* 590 F.2d 575 (5th Cir. 1979). Although the requirements established in *James* are to be applied prospectively only, *id.* at 583, we hold that reversal for a trial court's failure to follow *Apollo* is not mandated when no substantial rights of the defendant were violated.

AFFIRMED.